# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00755-CV

**Renee Sheree (Hopper) O'Carolan, Appellant**

**v.**

**Gary D. Hopper, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. 98-10618, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

Appellant Renee O'Carolan ("O'Carolan") seeks to reverse the trial court's property division as rendered in the final divorce decree. In two points of error, she contends the trial court abused its discretion in its disproportionate award of the community property to appellee Gary Hopper ("Hopper") and in awarding spousal maintenance as a substitute for a just and fair division of the community property. We will reverse the trial court's property division and remand for a new property division.

## Factual and Procedural Background

The parties were married for twenty-six years before the date of the divorce. There were two children of the marriage; only one was under age eighteen at the time of the decree.

Hopper earned at least $130,000 in 1999 and was earning between $8,000 and $9,000 a month at the time of the divorce.[1] O'Carolan had been unemployed for five months before the hearing on the divorce. During the previous two years, she worked only part-time for a concessionaire. Her highest earnings, $10.00 per hour, occurred in 1997 and 1998. O'Carolan had an associate (two-year) degree in fashion merchandising.

O'Carolan testified that she had neurosurgery in February 2000 related to Chiari Type I malformation.[2] O'Carolan testified that she experienced short-term memory loss, difficulty concentrating, and muscle weakness.[3] Hopper acknowledged that O'Carolan had had problems in the past requiring kidney surgery, bladder surgery, a hysterectomy, and disc surgery.

The community property consisted of: a house on two acres of land in Dripping Springs, valued at $130,000-150,000, carrying a debt of $86,000-87,000; an annuity life insurance policy with cash value of $10,000-11,000; a 1985 Honda motorcycle valued at $500; a 1995 Chevrolet Camaro, with a net value of $1500; a 1998 Chevrolet pickup with a net value of $1000; and various items of personal property either with a minimal value or not valued.

---

[1] All estimates of earnings and values for property are drawn from the parties' testimony at trial. There is no inventory in the record. At the hearing on motion for new trial, counsel for appellant claimed that a subpoena had been issued for the production of financial records at trial but those records were not produced. Counsel for appellee responded that he had just discovered the subpoena in the file. It appears that these records have never been produced.

[2] This condition is also known as Arnold-Chiari malformation and involves a herniation of the cerebellum into the spinal canal, causing a displacement of the brain stem. Dorland, *American Illustrated Medical Dictionary* 399 (22d ed. 1951).

[3] Dr. Wanda Leppard testified at the motion for new trial. According to the record from the motion for new trial, she had testified in chambers at the divorce hearing, but that testimony was not recorded. She had been counseling O'Carolan in connection with domestic abuse. They had discussed the Chiari diagnosis and its impact on O'Carolan.

While married, the parties had filed for bankruptcy, discharging their pre-separation debts. O'Carolan owed approximately $60,000 for medical expenses incurred after she and Hopper separated. She does not have a vehicle or telephone and receives assistance in the form of food stamps.

The divorce was awarded on no-fault grounds. The decree awarded the house, all three vehicles, the life insurance policy and numerous items of personal property to Hopper. The decree also awarded all retirement funds, IRAs and pensions from Hopper's employment to him, although he had testified that they had no remaining value. O'Carolan was awarded various items of personal property. Hopper was ordered to pay the debt against the house and vehicles as well as any debt he incurred after the parties' separation. Any debt O'Carolan incurred after separation was assigned to her, including the $60,000 in medical expenses.

The parties were appointed joint managing conservators of their seventeen-year-old son and Hopper was awarded the right to determine the principal residence of the child. No child support was ordered. The trial court ordered Hopper to pay O'Carolan spousal support for two years according to the following schedule: $1,000 per month for three months; $1,500 per month for the next eighteen months; and $2,000 per month for the last three months.

**Discussion**

In a divorce decree, the trial court shall order a division of the parties' estate in a manner that the court "deems just and right." Tex. Fam. Code Ann. § 7.001 (West 1998). Although the trial court does not have to divide the community property equally, its division must be equitable. *Zieba v. Martin*, 928 S.W.2d 782, 790 (Tex. App.—Houston [14th Dist.] 1996, no writ); *Schuster*

3

*v. Schuster*, 690 S.W.2d 644, 645 (Tex. App.—Austin 1985, no writ). The trial court's discretion is not unlimited, and there must be some reasonable basis for an unequal division of the property. *Zieba*, 928 S.W.2d at 790. The trial court, in exercising its discretion, may consider many factors, including the parties' earning capacities, education, business opportunities, physical condition, financial condition, age, size of separate estates, nature of the property, and the benefits that the spouse who did not cause the breakup of the marriage would have enjoyed had the marriage continued. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *Walston v. Walston*, 971 S.W.2d 687, 691 (Tex. App.—Waco 1998, pet. denied).

We review the trial court's division of property using an abuse of discretion standard. *Murff*, 615 S.W.2d at 700; *Walston*, 971 S.W.2d at 691. Legal and factual sufficiency are not independent grounds of error but relevant factors in assessing whether the trial court abused its discretion. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.). To constitute an abuse of discretion, the property division must be manifestly unfair. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980).

Not only does a review of the record show a total absence of evidence to support an unequal division of property in Hopper's favor, the majority of factors would support a disproportionate division in O'Carolan's favor. Hopper did not allege any fault on O'Carolan's part.[4] The parties' ages were roughly the same. There is no evidence that O'Carolan had any separate

---

[4] O'Carolan alleged and testified concerning Hopper's abuse and adultery. Hopper denied those allegations. The fact-finder is the sole judge of the weight and credibility of the evidence. *Simons v. City of Austin*, 921 S.W.2d 524, 531 (Tex. App.—Austin 1996, writ denied). Because the divorce was granted on no-fault grounds, we conclude fault was not considered in the property division.

estate. The record shows that Hopper had a significantly greater income, earning capacity, and business opportunities, important factors for consideration in the division of community property. *See Finch v. Finch*, 825 S.W.2d 218, 222 (Tex. App.—Houston [1st Dist.] 1992, no writ). Disparity in earning capacity is generally a factor weighing in favor of awarding a disproportionate share of the community to the lower income earner, here O'Carolan. *See, e.g., Thomas v. Thomas*, 525 S.W.2d 200, 202 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *Zieba*, 928 S.W.2d at 790-91; *Schuster*, 690 S.W.2d at 645. There was no evidence of health problems on Hopper's part. The evidence showed that O'Carolan suffered from a severe brain malformation. The problems caused by this brain malformation and its attendant surgery would impair O'Carolan's future earning ability.

The parties have one minor child who was to live with Hopper, however, there was no evidence that the needs of the minor child provided a basis for the disproportionate award of the community estate. The minor child turned eighteen within ten weeks of the entry of the decree. Although the child was expected to attend one more year of high school, there was no evidence that divesting O'Carolan of her share of the community property was necessary to provide for the support of the child in view of Hopper's earning ability. O'Carolan's demonstrated inability to earn a sufficient living wage could support the trial court's failure to award child support to Hopper.[5]

There is no evidence that the nature of the property compelled an unequal distribution in Hopper's favor. O'Carolan occupied the house, the principal asset, at the time of trial. The testimony concerning the value and marketability of the house is rather confusing. Apparently, the

---

[5] Hopper testified that his and O'Carolan's adult daughter lives with him and he is paying for college. There was no evidence concerning the college attended and its cost, however.

house needed repairs, some of them storm-related and covered by insurance proceeds. However, Hopper had refused to authorize the expenditure of that money. He said he had been unable to inspect the house closely enough to satisfy himself that the repairs were necessary, yet he also testified about the details of the necessary repairs, suggesting familiarity with the property. Although the trial court seemed to think that Hopper was better able to deal with supervising the repairs, and perhaps should occupy the house until his son finished high school, this could be accomplished in various ways, such as awarding occupancy to Hopper for a period of time during which he could supervise the repairs, and then ordering the property sold with the proceeds to be divided between the parties. We note that Hopper had requested that the property be sold and the proceeds divided.

It appears that the trial court treated spousal maintenance as if it were property and attempted to use that maintenance in lieu of awarding any property to O'Carolan.[6] Spousal maintenance, however, is not property. The legislative purpose in enacting provisions for spousal maintenance was to provide temporary and rehabilitative support for a spouse whose ability for self-support is lacking or has deteriorated over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 10.01(a), 1995 Tex. Gen. Laws 3543, 3577; *see also* Barbara Ann Kazen, *Division of Property at the Time of Divorce*, 49 Baylor L. Rev. 417, 438 (1997). It is an award from future income of a spouse, subject to strict restrictions, which terminates on the death of either party. Tex. Fam. Code

---

[6] The total amount scheduled to be paid over the two years, $36,000, appears to be an attempt at awarding O'Carolan more than one-half the equity in the house.

Ann. §§ 8.001-.305 (West Supp. 2002).[7] Maintenance is limited to not more than three years, unless the spouse receiving maintenance suffers from an incapacitating physical or mental disability such that that spouse cannot support himself or herself through appropriate employment. *Id*. § 8.054. The amount of maintenance is limited to the lesser of $2500 per month or twenty percent of the payor's average monthly gross income. *Id*. § 8.055(a). A maintenance order is subject to modification on a "proper showing of a material and substantial change in circumstances of either party." *Id*. § 8.057(c).

The trial court awarded spousal maintenance for twenty-four months. Given O'Carolan's health problems and lack of earning capacity, she may have been a proper candidate for spousal maintenance, but such an award should not be made in lieu of any interest in the available community property.[8] Under the trial court's payment schedule, the $2000 per month payment for the final three months exceeds twenty percent of Hopper's income of $9,000 per month and would be subject to modification, potentially reducing the amount of support O'Carolan receives. *Id*. §§ 8.055(a)(2), 8.057. Similarly, if Hopper were to suffer a substantial reduction in income, he could move to reduce support on that basis. *Id*. § 8.057(c). Finally, under the trial court's property division, if Hopper died during the payment schedule, O'Carolan would have no property of her own, no proceeds from the sale of community property, no income stream from Hopper, yet still be left

---

[7] Spousal maintenance is taxable to the payee spouse and deductible to the payor spouse. 26 U.S.C.A. §§ 71(a), 215(a) (West 1988).

[8] We note that Hopper asserts in his brief that O'Carolan concedes in her brief that she does not qualify for spousal maintenance. We find no such concession. Hopper apparently misread a statement containing a double negative; contrary to Hopper's assertion, O'Carolan contends that she qualifies for spousal maintenance and asserts that the trial court would have been within its discretion to award her both a share of the community property and spousal maintenance.

with a significantly impaired earning capacity. In these circumstances, an award of spousal maintenance leaves O'Carolan vulnerable to a reduction in the total amount of money received in a way that a fixed division of the community property would not.

The court seemed to consider only a rough dollar equivalence between the equity in the house and the amount of spousal support, without considering their fundamentally different natures and purposes.[9] Spousal support is includable as taxable income to the recipient and deductible from the payor's income, making it even more evident that the total sum of spousal support received by O'Carolan should not be balanced against the value of community property awarded to Hopper. Furthermore, the time value of money lessens the worth of support payable over twenty-four months as compared to a lump sum realized from a sale of the property. A review of the record persuades us that awarding all of the community property to Hopper and only spousal support to O'Carolan is manifestly unfair. *See Mann*, 607 S.W.2d at 245.

### Conclusion

We hold that the trial court abused its discretion in awarding only spousal support in lieu of any community property to O'Carolan. Insufficient evidence supports an unequal property division in Hopper's favor, persuading us that the trial court's division of community property is manifestly unfair. Accordingly, we reverse that part of the trial court's judgment and remand for a

---

[9] Based on the record from the hearing on the motion for new trial, the court had expressed concern to Dr. Leppard in chambers that O'Carolan's medical condition could cause her some problems in managing a lump sum of money from the sale proceeds from the house. However, that concern does not lead to the conclusion that divesting O'Carolan of her community property is the solution to that potential problem.

new property division. This judgment does not affect the dissolution of the marriage or any issue not addressed in this opinion.

_____

—

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Reversed and Remanded

Filed: March 14, 2002

Publish