TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00098-CV






Sytha Fern Reed, Appellant


v.


Myron Leroy Reed, Appellee







FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT

NO. 14,701, HONORABLE JOE CARROLL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Appellant Sytha Fern Reed appeals from the trial court's final decree granting her a
divorce from appellee Myron Leroy Reed, attacking the court's division of the couple's assets. We
affirm the trial court's decree. 

 The parties agree about many, but not all, of the facts in this case. The Reeds were
married on September 20, 1989. At the time of trial in December 2002, Mr. Reed was seventy-two
years' old and Mrs. Reed was sixty-three. Mrs. Reed entered the marriage owning two pieces of
property located in California and some cash savings. Mr. Reed owned a motor home, about $800
in savings bonds, furniture acquired during an earlier marriage, and a life insurance policy. In 1990,
Mrs. Reed sold her California properties, netting $91,703.13. In December 1990, the Reeds bought
a house in Killeen, paying for it in full with $56,900.58 of Mrs. Reed's separate funds. Mrs. Reed
testified that she did not intend for the money or the property to be a gift to Mr. Reed, and Mr. Reed
agreed that the money was Mrs. Reed's separate property. After buying the Killeen house, Mrs.
Reed deposited the $32,854.31 left from the sale of her California properties into a savings account
she opened in her name alone. Mrs. Reed also opened a checking account in the same credit union
and later added Mr. Reed to the checking account. The parties agreed that Mr. Reed's retirement
payments, about $1,000 a month, were deposited into the checking account. 

 In April 1996, the Reeds bought thirty acres in Lampasas County for $27,000, paying
$5,400 in cash and executing a $21,600 note. In November 1997, the Reeds sold the house in
Killeen, netting $71,609.55, which Mr. Reed conceded was Mrs. Reed's separate property. Mrs.
Reed then paid $33,398 for a mobile home that she and Mr. Reed placed on the Lampasas property
and made their home. The Reeds made a total of about $2,000 in monthly payments on the
Lampasas note until Mrs. Reed paid it off in March 1998 with $19,566.93 from her separate funds. 
The Reeds made improvements to the property, including electricity, an above-ground swimming
pool, a water well, a septic tank, a stock tank, a barn, a tractor shed, and a wheat and rye field. Mr.
Reed testified that the improvements cost $13,500 and were paid for out of the checking account,
but Mrs. Reed testified that the improvements were paid for by her separate funds. Mrs. Reed
testified that she transferred money from her savings account to the checking account when she
needed to make a large purchase, but except for a bass boat bought for $9,800, she could not produce
documentation to trace purchases made with her separate funds. The parties agreed that in 2000, Mr.
Reed cashed in his life insurance policy for about $20,000 and deposited the money into Mrs. Reed's
savings account. At the time of a hearing on temporary orders, the account held $31,000; Mr. Reed
received $15,000 of that money, which Mrs. Reed agreed was his separate property.

 The parties largely agreed that the community estate consisted of the Lampasas
property, a 1992 truck, a 1994 car, a travel trailer, four heifers, a bull and one calf, and miscellaneous
tools and appliances. Mr. Reed asserted that the property was worth $120,000, Mrs. Reed valued
it at $90,000, and the taxing authorities valued it at about $110,000. The parties agreed that the
living and dining room furniture, two tractors, and a Trac Loader were Mr. Reed's separate property.

 Mr. Reed testified that he inherited $21,000 from his mother, which was deposited
into the checking account, and that he bought his tractors with money received when he sold his
motor home, not with his inheritance. Mr. Reed also testified that the $5,400 down-payment and
improvements made to the Lampasas property were paid for out of the couple's checking account. 
Asked whether money for large purchases was transferred to the account from Mrs. Reed's separate
funds, Mr. Reed said he did not know. Mr. Reed testified that Mrs. Reed kept the checkbook and
controlled their finances, and he denied having a separate bank account. He testified that when he
needed a check for a purchase, he asked Mrs. Reed for one.

 Mrs. Reed denied that Mr. Reed's inheritance was deposited into either credit union
account or used for the Lampasas property. She testified instead that Mr. Reed told her he used most
of it to buy tractors and tractor parts. Mrs. Reed produced tax documents for the 1993 and 1994 tax
years, showing that a bank in Temple, Texas, paid Mr. Reed interest for an account in his name, and
said she did not have signing rights on that Temple bank account. Mrs. Reed testified that the down
payment and improvements were paid from their checking account after she transferred money in
from her separate savings account. 

 In the final decree, the trial court divided the community property as follows: Mrs.
Reed was awarded the Lampasas property, furnishings and clothing in her possession, the livestock,
and the 1994 auto, and was ordered to pay Mr. Reed $24,000 for his interest in the Lampasas
property; Mr. Reed was awarded $24,000, furnishings and clothing in his possession, and the 1992
truck. The trial court confirmed as Mr. Reed's separate property the two tractors, the Trac Loader,
the living and dining room furniture, and some tools. 

 In granting a divorce, a trial court "shall order a division of the estate of the parties
in a manner that the court deems just and right." Tex. Fam. Code Ann. § 7.001 (West 1998);
Wilkerson v. Wilkerson, 992 S.W.2d 719, 722 (Tex. App.--Austin 1999, no pet.). A trial court has
broad discretion in making such a division. Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981);
Wilkerson, 992 S.W.2d at 722. In reviewing a trial court's property determinations on appeal, we
will presume the trial court exercised its discretion properly and will reverse only if we find a clear
abuse of discretion. Murff, 615 S.W.2d at 698-99. A clear abuse of discretion occurs only if the
property division is manifestly unjust and unfair. Mann v. Mann, 607 S.W.2d 243, 245 (Tex. 1980);
O'Carolan v. Hopper, 71 S.W.3d 529, 532 (Tex. App.--Austin 2002, no pet.). A trial court need
not make an equal division of marital property so long as the division is equitable and justified by
the circumstances. Murff, 615 S.W.2d at 699; O'Carolan, 71 S.W.3d at 532; Kimsey v. Kimsey, 965
S.W.2d 690, 704 (Tex. App.--El Paso 1998, pet. denied). 

 The community estate consists of all property, other than separate property, acquired
by either spouse during the marriage; property owned by either spouse at the time of divorce is
presumed to be community property. Tex. Fam. Code Ann. §§ 3.002, .003(a) (West 1998). A
spouse's separate estate includes property owned by the spouse before marriage, property acquired
during the marriage by gift or inheritance, and recovery for personal injuries suffered by the spouse
during the marriage, excepting damages for lost earning capacity during the marriage. Id. § 3.001
(West 1998). A trial court may not divest a spouse of her separate property in dividing the estate. 
Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 142 (Tex. 1977); Wilkerson, 992 S.W.2d at 722. To
overcome the community-property presumption, the spouse claiming an item as separate property
must establish that fact by clear and convincing evidence and must trace and clearly identify the item. 
McElwee v. McElwee, 911 S.W.2d 182, 188 (Tex. App.--Houston [1st Dist.] 1995, writ denied);
see Tex. Fam. Code Ann. § 3.003(b).

 The use of separate property to purchase or otherwise benefit another estate may give
rise to a claim of reimbursement against the benefitted estate. Penick v. Penick, 783 S.W.2d 194,
196-97 (Tex. 1988); Wilkerson, 992 S.W.2d at 722-23. Reimbursement is an equitable remedy, and
a trial court must examine the circumstances to determine what is fair, just, and equitable. Penick,
783 S.W.2d at 197; Anderson v. Gilliland, 684 S.W.2d 673, 675 (Tex. 1985). Reimbursement is not
a mere balancing of ledgers between marital estates, and a trial court has broad discretion in
determining reimbursement issues. Penick, 783 S.W.2d at 198. A reimbursement claim is measured
by the enhancement to the benefitted estate, and the benefitted estate should not be required to pay
more than the amount by which it was benefitted. Anderson, 684 S.W.2d at 675.

 The parties agree that the house in Killeen was bought with Mrs. Reed's separate
property and they do not dispute that the proceeds of that sale were Mrs. Reed's separate property. 
Nor does Mr. Reed dispute that the mobile home and the final pay-off of the land in Lampasas were
paid for by Mrs. Reed's separate funds. However, Mr. Reed asserts that the $5,400 down-payment
and the improvements amounting to about $13,500 were paid out of the checking account into which
his retirement checks and his $22,000 inheritance were deposited. He testified that he did not
manage the couple's money and did not know what became of the various monies deposited into the
checking and savings accounts. Mrs. Reed agreed that his retirement checks were deposited into the
checking account, but denied that his inheritance was deposited into the account. 

 There is a presumption that property acquired during a marriage is community
property, and the spouse asserting an item is separate property must show that fact by clear and
convincing evidence. See Tex. Fam. Code Ann. § 3.003(b); McElwee, 911 S.W.2d at 188. The trial
court as fact-finder could have concluded that Mr. Reed's inheritance was deposited into the
checking account, that the improvements and down-payment were community-funded, and that the
taxing authorities' value was the appropriate value to use, in which case, Mrs. Reed would be
entitled to assert a claim to $78,875.62 of the tax-assessed $110,000 value. (1) Mrs. Reed was awarded
the entire property and ordered to pay Mr. Reed $24,000; thus, she received $86,000 of the $110,000
value. 

 Although the $24,000 awarded to Mr. Reed amounts to more than half of the
community estate's $31,124.38 interest in the property, the trial court has broad discretion in
dividing the community estate and need not divide the estate equally, as long as its division is
equitable and any unequal division is reasonably supported. See O'Carolan, 71 S.W.3d at 532. Mr.
Reed received $24,000 for his interest in the property, $15,000 to pay him his remaining separate
life-insurance funds, his truck and furnishings in his possession, and his separate furniture and
tractors. Mrs. Reed was not divested of her separate property and she received the Lampasas
property, valued at about $110,000, less $24,000, all community furnishings and appliances
remaining on the property, the livestock, and $16,000 remaining in the checking account.

 Based on this record, we cannot find that the trial court abused its discretion or that
the division of the community estate was manifestly unfair. See O'Carolan, 71 S.W.3d at 532. We
overrule Mrs. Reed's issues on appeal and affirm the trial court's final decree of divorce.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: May 26, 2005
1. We arrive at this number using the statutory formula in place at the time of trial: $110,000
x ($52,964.93 / ($52,964.93 + 0 + ($2,000 + $5,400 + $13,500))) = $78,875.62. See Act of May
18, 2001, 77th Leg., R.S., ch. 838, § 2, 2001 Tex. Gen. Laws 1679, 1681 (since revised, current
version at Tex. Fam. Code Ann. § 3.403 (West Supp. 2004-05)).