# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00221-CV

**Ronald J. Hewelt, Appellant**

**v.**

**Virginia M. Hewelt, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. 98-11567, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from the second of two trials on the question of the proper division of the Hewelts' marital estate upon divorce. In the second trial, the district court reconsidered the division of the marital estate on remand from this Court. Appellant Ronald J. Hewelt brings this appeal, again challenging the property division. In eight points of error, he complains of the trial court's characterization of certain stock options granted to Virginia M. Hewelt through her employment as separate property, the trial court's division of the community estate, and the disposition of Virginia M. Hewelt's obligation to pay a portion of the costs of the prior appeal. Because we conclude that there was no abuse of discretion by the trial court in its division of the couple's property or its disposition of costs, we affirm the judgment of the trial court.

*Factual and Procedural Background*

This divorce proceeding was originally tried to a jury in 1999. The parties were divorced on September 10, 1999, and the divorce decree was signed on December 10, 1999. One of the primary issues at trial was how to properly characterize and divide unvested stock options granted through Virginia's employment. Both parties relied on evidence presented through the testimony of a single expert, Larry Bradford, a C.P.A. certified in business valuations.[1] Finding that Virginia had failed to overcome the community presumption, the first trial court determined that all of the stock options were community property. Based on Bradford's testimony, the court valued the options according to a time-rule formula derived from California case law. *See In re Marriage of Hug*, 154 Cal. App. 3d 780, 201 Cal. Rptr. 676 (Cal. App. 1984). Rather than assigning a dollar value to the stock options, the first trial court used the term "value" to describe the percentage of the stock options that was either attributable to the community contribution during marriage or to Virginia's separate contribution after divorce.[2] The court then divided the options based on the

---

[1] Although Mr. Bradford was initially contacted by Ronald's attorney, he was the sole expert at trial, and both parties relied on his testimony.

[2] To determine the percentage of the value attributable to the community contribution for each option, the total number of shares is multiplied by a fraction of which the numerator is the period in months from the date the spouse's employment began to the date the parties separated, and the denominator is the period in months from the date the spouse's employment began to the date when each option can be exercised. For example, for shares that vested March 9, 2001, the percentage or value of the shares that is attributable to the community effort is determined as follows: the numerator is 18, which is the period in months from the date of employment (March 1998) to the date of separation (September 1999); the denominator is 36, which is the period in months from the date of employment (March 1998) to the date each option can be exercised (March 2001). The resulting fraction is ½ or 50 percent. Thus, 50 percent of the value of these options is attributable to the community effort. Applying the formula to the other vesting dates, the value attributable to the community effort for options vesting March 9, 2000, is 18/24 or 75 percent, and the value attributable to the community effort for options vesting March 9, 1999, is 18/12 or 100 percent.

percentage of the value that was attributable to either the community effort or to Virginia's separate effort. Because some of the value was attributable solely to Virginia's separate efforts, she was awarded a greater percentage or value of the community stock options.[3]

In the first of his two appeals to this Court, Ronald appealed the trial court's original property division. *See Hewelt v. Hewelt*, No. 03-00-00166-CV, 2001 Tex. App. LEXIS 5930 (Tex. App.—Austin 2001, pet. filed) (mem. op.). Ronald's primary complaint in the first appeal related to the trial court's valuation and division of the stock options.

Reviewing the trial court's property division in the first appeal, we determined that the trial court's findings were not supported by the evidence. We concluded that the trial court misapplied the formula admitted through the testimony of Bradford and relied on by both parties. Because the stock options were a significant part of the marital estate, the trial court's misapplication of the formula for valuing the stock options could have materially affected the community property division. Thus, it was unnecessary for us to address the remaining issues before us on the first appeal.[4] We remanded the case for the trial court to reconsider the division of the entire community estate in light of a correct application of the method for valuing the stock options. We affirmed the divorce decree in all other respects.

---

[3] We note that the court's valuation of the community stock options during the first trial resulted, in effect, in assigning a portion of the value of the stock options as separate property and a portion as community property using the time-rule formula.

[4] When reversible error occurs that materially affects the trial court's division of property, an appellate court is not permitted either to render a different division or to remand only certain portions of the marital property for a new division; rather it must remand the entire community estate for a new division. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 732-33 (Tex. 1985).

3

On remand, the parties tried the question of the property division of the community estate to the bench. To achieve a just and right division of the property, the second trial court characterized a portion of the community stock options as Virginia's separate property based on the formula presented by the parties' expert, Bradford, in the first trial.[5] In addition to characterizing some of the stock options as separate property, the second trial court reexamined and divided the community estate. Viewed in its entirety, the community estate, as determined by the trial court, was divided equally between the parties. Dissatisfied with the trial court's division of property, Ronald again appeals to this Court.

In the present appeal, Ronald challenges the trial court's property division. In eight points of error, Ronald contends that the trial court erred in (1) characterizing the stock options as both separate and community property, (2) dividing the community estate, and (3) offsetting Virginia's obligation to pay a portion of the costs of the prior appeal.

### Characterization of the Stock Options

Ronald contends that the trial court erred in characterizing the stock options as part community property and part Virginia's separate property on remand. He argues that neither party appealed the issue of the first trial court's characterization of the marital property in the original

---

[5] After taking judicial notice of Bradford's testimony from the first trial and the methodology used in making the valuation of the stock options in the first trial, the second trial court correctly applied the methodology to effectively characterize portions of the stock option value as separate property and community property and then divided the community property portion. Thus, for options vesting March 9, 2001, 50 percent were community property, for options vesting March 9, 2000, 75 percent were community property, and for options vesting March 9, 1999, 100 percent were community property.

4

proceeding and that our mandate from the first appeal allowed the trial court to reconsider only its division of the community estate, not to characterize as separate property any of the property that had already been determined to be part of the community estate.[6]

The general rule is that when an appellate court reverses and remands a case for further proceedings and the mandate is not limited by special instructions, the effect is to remand the case to the lower court for a new trial on all issues of fact and the case is re-opened in its entirety. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). In interpreting a mandate, courts should look not only to the mandate itself, but also to the opinion. *Id.* For the scope of remand to be limited, the appellate court's intent must clearly appear from the decision. *Garcia v. Martinez*, 988 S.W.2d 219, 221 (Tex. 1999).

Our opinion in the prior appeal of this case remanded "the property division in order for the trial court to exercise its discretion in determining a new division of the property." Our mandate, broader still, provided that the case was remanded for reconsideration of the "part of the judgment disposing of the marital property." Thus, our opinion and mandate on remand of the first appeal was broad enough to allow the district court to reconsider the disposition of all of the marital estate. This mandate allowed the district court to reconsider both the division and characterization of marital property for the purpose of arriving at a just and right division of marital property as a whole.

---

[6] We note that, as an alternate ground for affirmance in the first appeal, Virginia argued that the trial court in the first trial erred in characterizing all the options as community property.

To achieve a just and right division of the property on remand, the second trial court used Bradford's formula to characterize a portion of the stock options as Virginia's separate property. Rather than using the term "value" to describe the percentage of the stock options that was either attributable to the community contribution during marriage or to Virginia's separate contribution after the divorce, the second trial court simply characterized as Virginia's separate property the portion of the stock options attributable to Virginia's separate contribution after divorce, as was initially contemplated by the time-rule formula that both parties relied on as part of Bradford's expert testimony.[7]

Based on the evidence presented at trial, we conclude that the trial court's characterization of a portion of the stock options as part Virginia's separate property on remand was

---

[7] At the time of the trials, Texas law did not specifically provide a method for valuing and dividing stock options. After the conclusion of the second trial, the legislature amended the family code to provide for the characterization and division of stock options. *See* Tex. Fam. Code Ann. §§ 3.007(d)-(f) (West 2006). The statute outlines a time-rule formula to establish the percentage of each stock option that is separate property based on the portion attributable to the spouse's separate contribution after divorce. The numerator is the period in months from the date of termination of the marriage and the date the option can be exercised. The denominator is the period in months from the date the option is granted to the date the option can be exercised. This fraction is applied to each option to determine the separate property interest. Applying this statutory formula to the remaining stock options results in exactly the same division as that adjudged by both trial courts in this litigation. For example, for options vesting March 9, 2001, the separate property interest is the following: the numerator is 18, which is the period in months from the date of termination of the marriage (September 1999) to the date the option can be exercised (March 2001); the denominator is 36, which is the period in months from the date the option is granted (March 1998) to the date the option can be exercised (March 2001). The resulting fraction is ½ or 50 percent. Thus, 50 percent of these options are separate property. Applying the formula to the other vesting dates, Virginia's separate portion of the options vesting March 9, 2000, is 6/24 or 25 percent, and Virginia's separate portion of the options vesting March 9, 1999, is 0/1 or 0 percent. Thus, the Texas legislature has adopted a time-rule formula methodology for valuing stock options that is similar to that used by both of the trial courts in this case.

6

necessary to achieve a just and right division of the property. We decline to read our mandate from the first appeal so narrowly as to preclude reconsideration of the characterization of community and separate property when reconsideration of such characterization was necessary for a just and right division of the stock options. Indeed, characterization of the marital property was the only means by which the trial court could correctly divide the stock options based on the evidence presented. We conclude that the trial court acted within the scope of our mandate in characterizing the stock options as part separate and part community property.

### *Division of the Community Estate*

Ronald also contends that the trial court erred in its division of the community estate. He argues that the estate was divided unequally in favor of Virginia. According to Ronald, the evidence supports an unequal division in his, not Virginia's, favor.

A trial court must make a just and right division of the community estate. Tex. Fam. Code Ann. § 7.001 (West 2006). The division need not be equal, but must be equitable. *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). The trial court has wide discretion in determining a just and right division. *Id.* In making this determination, the trial court may consider many factors, including the parties' earning capacities, abilities, education, business opportunities, physical condition, financial condition, age, size of separate estates, nature of the property, and the benefits which the spouse, who did not cause the breakup of the marriage, would have enjoyed had the marriage continued. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981).

Because the trial court has broad discretion in determining an equitable division, the division will be overturned only if the division is manifestly unfair. *Id.* at 698; *O'Carolan*,

71 S.W.3d at 532. On appeal, the presumption is that the trial court correctly exercised its discretion, and the appellant has the burden of showing that the division was unsupported by the evidence and, therefore, manifestly unfair. *Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex. 1982). In reviewing a property division under this standard, the reviewing court must consider the entire community estate. *Murff*, 615 S.W.2d at 698. If the trial court's division was not manifestly unfair, it was not an abuse of discretion.

In the second trial, each party was awarded the personal property in his or her possession and the funds in each savings or checking account in his or her name. The items in storage, the 401K plans, and the deferred compensation plans were divided equally. Each party was awarded two vehicles. Although Virginia was awarded the house and, therefore, received the proceeds from the sale of the house, she incurred significant post-divorce expenses in improvements, maintenance, taxes, and insurance.[8] Finally, the stock options were awarded to the parties based on the formula set out above. Virginia retained her separate property percentage of the stock options, and the community portion of the stock options was divided equally between the parties. All of the evidence shows that the community estate was divided equally between the

---

[8] The value of the house at the time of divorce on September 10, 1999, was $490,000, and the debt secured by the residence was $436,797. After the divorce, Virginia improved the residence, which had initially been awarded to her in the 1999 Decree of Divorce. The evidence shows that, after the divorce, Virginia spent $94,180.64 in improvements, $38,586.00 for taxes and insurance, and $7,800.00 for maintenance. In May 2001, she sold the house for $650,000.

parties.[9]   No evidence supports Ronald's contention that the community estate was divided disproportionately in Virginia's favor.

Ronald asserts, however, that the marital property should have been divided disproportionately in his favor.  Factors that may be considered in determining a property division are the parties' earning capacities, education, business opportunities, physical condition, financial condition, age, size of separate estates, nature of the property, and the benefits that the spouse who did not cause the breakup of the marriage would have enjoyed had the marriage continued.  *Id.* at 699.  Ronald addresses each factor set out in *Murff*, arguing that, considering those factors, the marital estate should be divided disproportionately in his favor.  *See id.*  According to *Murff*, however, the trial court "may consider many factors" in exercising its discretion.  *Id.*  The factors set out in *Murff* are factors that "may" be considered, not factors that "must" be considered.  *See id.* at 698-99; *see also Young v. Young*, 609 S.W.2d 758, 761 (Tex. 1980) ("The circumstances of each marriage dictate what factors should be considered in the property division upon divorce.").

In the present case, the trial court specifically enumerated the factors it considered in dividing the community estate:

a.      The parties' earning capacities are relatively equal.

b.      The parties each had primary responsibility for the care of the children for periods of time post-divorce.

---

[9] We note two significant discrepancies between the calculations in Ronald's briefing to this Court and the trial court's property division.  First, the separate property portion of Virginia's stock options must not be included in the community estate.  Second, the proceeds of the sale of the house must be offset with the post-divorce expenses incurred by Virginia to maintain and improve the house.  Once these calculations are corrected, the resulting division is substantially equal.

c.      Virginia Hewelt had sole responsibility post-divorce for management of the child support trust on behalf of the children, for which she received no compensation.

d.      Virginia Hewelt had sole responsibility post-divorce for disposition of the parties' personal property items, and she incurred expenses in connection with fulfilling that responsibility.

e.      Virginia Hewelt's post-divorce employment was required for both parties to obtain any benefit from the stock options which were unvested at the time of the parties' divorce.

Because Ronald disputes only the findings regarding the parties' earning capacities and the stock options, we will limit our discussion to those factors. We have already addressed the division of the stock options and have found the trial court's characterization and division to be supported by the evidence and a proper exercise of its discretion. We now turn to the parties' earning capacities.

Ronald argues that there is no evidence to support the trial court's finding that the parties have relatively equal earning capacities.[10] The evidence presented shows that, at various times throughout these trials and appeals, both Ronald and Virginia have been unemployed. When they were employed, Virginia's salary ranged from $120,000 per year to $162,000 per year. Ronald's salary was $84,000. Virginia has earned both bachelor and master degrees while Ronald has earned a technical degree. While, taken together, the evidence shows that Ronald never earned as much as Virginia during the marriage, it is not conclusive as to their relative earning capacities. The trial court could have determined that both parties had the ability to earn substantial incomes, whether that income was $84,000 or $120,000 or even $162,000. In addition, Ronald was a self-

---

[10] Ronald also challenges the trial court's finding that, at the time of the second trial, Ronald earned $150,000 per year; however, this finding was made for the sole purpose of determining child support and was not the basis for the trial court's property division.

10

proclaimed "Mr. Mom" and may, therefore, have opted for a lower-paying, less-time consuming job during the marriage. In addition, the security of both parties' jobs was subject to market fluctuations, and both Ronald and Virginia had been laid off at least once due to market conditions. Finally, even if the parties' earning capacities are not comparable, earning capacity is only one of the factors on which the trial court based its division, and the court could have found that other factors weighed more heavily in arriving at a just and right division.

The trial court's role is to weigh the evidence, determine credibility, and divide the estate based on the court's findings. *See Murff*, 615 S.W.2d at 700. Having reviewed the evidence, indulging every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing community assets, we cannot say that the trial court abused its discretion in dividing the community property equally between the parties. *See id.* at 699. Ronald has failed to demonstrate that the trial court's substantially equal division of the property was manifestly unfair. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980). Accordingly, we conclude that the trial court's division of the marital estate was a proper exercise of its discretion.

### *Costs of Appeal*

Lastly, Ronald contends that the trial court acted outside its authority by offsetting Virginia's obligation to pay half of the cost of the prior appeal with her post-divorce expenses. He argues that the appeal costs were never a part of the community obligation and should not have been considered as a part of or as an offset to the property division.

When an appellate court issues a mandate, the trial court's duty is to "give effect" to the judgment by issuing proper orders. *Harris County Children's Protective Servs. v. Olvera*,

11

971 S.W.2d 172, 175-76 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). In enforcing mandates, trial courts retain jurisdiction to perform duties collateral to and consistent with the mandate. *Madeksho v. Abraham*, 112 S.W.3d 679, 685 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The trial court is given reasonable discretion in enforcing the mandate. *Austin Transp. Study Policy Advisory Comm. v. Sierra Club*, 843 S.W.2d 683, 690 (Tex. App.—Austin 1992, writ denied).

After the first appeal, we required Virginia to pay half of the costs of the first appeal. However, the evidence shows, and the trial court found, that Virginia incurred significant post-divorce expenses after the first appeal, including expenses for storage and sale of the parties' personal property, child-related expenses in excess of funds available in the child support trust, costs associated with post-divorce modifications and appeals, and income taxes associated with the marital estate. Total expenses incurred were $176,370.80. These expenses more than offset half the costs of the prior appeal, which totaled $8,426.97. Thus, we conclude that the trial court acted within its authority in finding that Virginia's obligation to pay appeal costs was offset by post-divorce expenses.

### Conclusion

The trial court's division of the marital estate is supported by the evidence and does not constitute an abuse of discretion.

We affirm the judgment of the trial court.

12

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:  November 14, 2007