# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00705-CV

---

**Jude Ugwu, Appellant**

**v.**

**Cynthia Ugwu, Appellee**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-17-004244, THE HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

This suit for dissolution of the marriage between Jude and Cynthia Ugwu revolves around the results of a paternity test that was admitted for the purpose of showing infidelity. Jude[1] asserts that the district court erred because (1) the final divorce decree lists his daughter as one of the "children of the marriage" even though he introduced a paternity test showing that he was not her biological father, and (2) Cynthia received a disproportionate share of the property. We will affirm.

### BACKGROUND

Jude and Cynthia's daughter was born in 2004. In 2008, Jude expressed doubts about his daughter's paternity but did not have a paternity test at that time. Jude and Cynthia's

---

[1] We refer to the parties by first name because they share a last name.

son was born in 2012. In 2013, Jude had a paternity test that confirmed he was not his daughter's biological father. In 2017, Jude filed a petition for divorce in which he listed both his daughter and son as "children of the marriage." He sought the exclusive right to designate their primary residence and asked that Cynthia be ordered to pay child support and medical support to him for both children. Jude also sought to be the exclusive decisionmaker with regard to the children's medical treatment and education based on his expertise as a nurse and familiarity with education in the United States. In her counterpetition, Cynthia sought the exclusive right to designate the children's primary residence and asked that Jude be ordered to pay child support and medical support. She took the position that both parents should be involved in medical and educational decisions for the children.

At a bench trial on the merits, Jude testified that he became a licensed vocational nurse (LVN) in 2008, and continues to take classes to obtain a bachelor of science in nursing and become a registered nurse. As a result of being an LVN, Jude was able to work a second job in addition to his full-time work for the State of Texas. He earns over $9,000 per month and opined that having this income makes him better able to make needed repairs to the marital home and care for the children than Cynthia. Cynthia works from home designing and making clothing, is the children's primary caregiver, and worked intermittently as a certified nursing assistant (CNA) until obtaining a full-time position that she kept for over a year before the divorce petition was filed. In order to maintain a full-time CNA job, Cynthia had her mother move in with the family. Cynthia works as a CNA at night, comes home in time to take the children to school, and usually picks them up from school. Her mother stays with the children in the latter part of the evening and is home while the children are sleeping. Cynthia testified that she uses her income to pay for the family's food, for the yard to be mowed, for clothing for the children,

2

for her own health insurance, for her car note and car insurance, and for her daughter's cell phone. Jude pays the mortgage, the utilities, and any other household bills.

The parties did not agree on how to divide the marital assets, although both argued that the children should be allowed to stay in the marital home. Each party also alleged that the other had been unfaithful in the early years of the marriage. To support his contention that he should receive sixty percent of the community estate, including the marital home, Jude introduced the results of the DNA test into evidence solely for the purpose of showing that Cynthia had been unfaithful. He had the following exchanges with his attorney at the trial:

Q. And are you asking the Court today to order to adjudicate [daughter] as your child?

A. I'll leave that to the attorneys to decide.

Q. Well, are you asking—you're not asking the Court today to say that [daughter] is not your kid, right?

A. No.

Q. You accept parental responsibility for [daughter], correct?

A. Yes.

Q. And since [daughter]'s been born you've been her parent.

A. Yeah, I've been her parent. I've been taking care of her everything.

Q. And no other parent has ever stepped in—or no other father has ever stepped in and said that they are her parent?

A. No.

Following a recess, Jude's attorney again asked him about the purpose of admitting the paternity test:

Q. So we were discussing the paternity tests, correct?

A. Yes.

Q. And the purpose of our admitting the paternity test is not to deny paternity as for your purposes for this point forward of [daughter], correct?

A. No.

Q. Okay. One of the allegations that you're making was that Mrs. Ugwu was not faithful, correct?

A. Yes.

Q. And it's your belief that this paternity test evidences that Ms. Ugwu was not faithful, correct?

A. Yes.

Both parents testified that their daughter has not been informed that she is not Jude's biological daughter. Jude testified, in response to questions from his attorney:

Q. And so have either of you told [daughter] that you are not her biological father?

A. No.

4

Q. Okay.

A. I don't know about her, but me no.

Q. Okay. And you intend to keep it that way until she's old enough to understand?

A. Yes. That's why I have been in this marriage, trying to keep the marriage going, because I don't want her to go through that pain.

Q. Okay. How did you feel whenever you found out that she wasn't your biological child?

A. I feel hurt.

Q. Are you bonded with [daughter]?

A. Yes.

Q. Can you describe your relationship? Just generally describe your relationship with [daughter].

A. I have a very strong relationship with [daughter]. I do her homework. I'm in contact with all her teachers in her school. I take food to her while on break. So we have a very, very strong . . . . I take my daughter food during her break to school. We have a good relationship. I take [daughter], [son] and her friends to Gattiland all the time to play. I take them to Lakeline Mall to play. I mean, we have a good relationship.

He also testified that he was concerned that using the paternity test to show anything other than Cynthia's infidelity might jeopardize his daughter's immigration status. After discussing the paternity test as evidence of infidelity, Jude and his attorney discussed the children in greater detail without any mention of the paternity issue. For example, in response to being asked what

grade "your kids" are in, Jude responded, "[Daughter] will go into the seventh grade. She did well. [Son] will go into the first grade."

During closing argument, Jude's attorney stated:

> The evidence did show that the fault in the breakup lies primarily with Mrs. Ugwu due to some infidelity, some deceit, and that's specifically evidenced by the paternity of [daughter]. And again, the only reason we bring that up today is just due to the fact that it evidences infidelity and not that it evidences any indication or intention of Mr. Ugwu of denying any kind of paternity or attempting to abdicate any kind of paternity to [daughter]. He wouldn't dare do that just due to some potential—obviously he would lose a daughter and potential immigration issues that could put her at risk. And again, we just want to make sure that the Court's clear about that.

The district court ordered that Cynthia and Jude be joint managing conservators of the children and awarded Cynthia the exclusive right to designate the children's primary residence. Jude was ordered to pay Cynthia child support. The district court also divided the couple's property.

## ANALYSIS

We review a trial court's decisions regarding division of the marital estate, child support, child custody, control, possession, and visitation under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981) (division of the marital estate); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (child support); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (child custody, control, possession, and visitation). "A trial court abuses its discretion when its ruling is arbitrary, unreasonable or without reference to any guiding rules or legal principles." *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). Under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused

6

its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied); *In re D.M.*, 191 S.W.3d 381, 393 (Tex. App.—Austin 2006, pet. denied).

The trial court's findings of fact and conclusions of law in a bench trial have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same well-established standards applied in reviewing the sufficiency of the evidence supporting a jury's finding. *Id.* Under a sufficiency analysis, we do not serve as a fact finder, pass upon the credibility of witnesses, or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

**Adjudication of Paternity**

In his first issue, Jude contends that the admission of the genetic test excluding him as the biological father required the district court to adjudicate Jude as not the father because the Family Code provides: "Unless the results of genetic testing are admitted to rebut other results of genetic testing, a man excluded as the father of a child by genetic testing shall be adjudicated as not being the father of the child." Tex. Fam. Code § 160.631(d). Jude further asserts he is not barred from asking the district court to adjudicate him as not being the father by section 160.607 of the Family Code, which requires that a proceeding to adjudicate the parentage of a child having a presumed father[2] "be commenced not later that the fourth anniversary of the date of birth of the child," because of his "mistaken belief that he was the child's biological father based on misrepresentations that led him to that conclusion." *See id.* § 160.607(a), (d).

---

[2] The district court found that "Jude Ugwu is the presumed father of the children." Jude does not dispute that the presumption applies.

However, the district court found that "Jude Ugwu had doubts about his paternity of [daughter] as early as July 9, 2008," several months before her fourth birthday, and that he "was not precluded from filing a lawsuit to challenge his paternity before the expiration of the four (4) years of the date of birth of the child, [daughter], because of a mistaken belief that he was the child's biological father based on misrepresentations that led him to that conclusion." In support of these findings, the record contains a letter Jude wrote in 2008 expressing his doubts and his intention to have a paternity test.

Moreover, assuming Jude could dispute parentage at trial, Jude's argument disregards his petition, argument, and testimony before the district court, where he expressly asked the district court to consider the DNA test only for the purpose showing Cynthia's infidelity and expressly asked that it not be considered in any manner that would impact his "very strong relationship with [daughter]." "A party to a lawsuit cannot ask something of a trial court and then complain on appeal that the trial court committed error in granting that party's request." *Naguib v. Naguib*, 137 S.W.3d 367, 375 (Tex. App.—Dallas 2004, pet. denied) (quoting *Northeast Tex. Motor Lines, Inc. v. Hodges*, 158 S.W.2d 487, 488 (Tex. 1942)); *see Austin Transp. Study Policy Advisory Comm. v. Sierra Club*, 843 S.W.2d 683, 689-90 (Tex. App.—Austin 1992, writ denied). "The rule, grounded in even justice and dictated by common sense, is that he is estopped." *Northeast Tex. Motor Lines*, 158 S.W.2d at 488; *see Neasbitt v. Warren*, 22 S.W.3d 107, 112-13 (Tex. App.—Fort Worth 2000, no pet.). Because the record on appeal conclusively establishes that the district court entered its judgment in full compliance with Jude's request, his complaints about the district court's action in complying with his request are foreclosed. *See Naguib*, 137 S.W.3d at 375. We overrule Jude's first issue.

**Just and Right Property Division**

In his second issue, Jude asserts the district court erroneously awarded Cynthia a disproportionate share of the marital estate. A trial court must "order a division of the estate of the parties in a manner that the court deems just and right," Tex. Fam. Code § 7.001, and has broad discretion in making that division, *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988); *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). The trial court does not have to divide the community property equally, but the division must be equitable and the record must reflect a reasonable basis for an unequal division of the property. *O'Carolan*, 71 S.W.3d at 532. "To constitute an abuse of discretion, the property division must be manifestly unfair." *Id.* (citing *Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980)).

In exercising its discretion, the court may consider factors such as the parties' "earning capacities, education, business opportunities, physical condition, financial condition, age, size of separate estates, nature of the property, and the benefits that the spouse who did not cause the breakup of the marriage would have enjoyed had the marriage continued." *Id.* The trial court has the opportunity to observe the parties and other witnesses, determine credibility, and evaluate the parties' needs and potentials. *Murff*, 615 S.W.2d at 700. "Mathematical precision in dividing property in a divorce is usually not possible. Wide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse." *Id.* The appellant bears the burden "to show from the record that the division was so disproportionate, and thus unfair, that it constitutes an abuse of discretion." *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.).

Both Jude's petition and Cynthia's counterpetition expressed the belief that the parties would agree on a division of property but requested that the district court divide the estate

in a manner that it "deems just and right" if "such an agreement is not made." The parties did not agree on a property division, but they entered a joint exhibit in which they agreed on the value of every asset and debt, except that Jude valued Cynthia's attorney's fees at $200 less than Cynthia did. The joint exhibit also contained each of their proposed divisions of the property. Jude complains that Cynthia's pleading did not give him fair notice that she might be awarded a disproportionate share of the estate, even though Jude testified that it would be a just and right division of the community property for the district court to award him sixty percent of the marital estate based on his identical pleading. In the joint exhibit, Jude sought fifty-four percent of the estate, while Cynthia sought fifty-seven percent. The district court adopted Cynthia's proposed division and awarded her fifty-seven percent of the estate. Jude asserts that the district court erred in considering the five factors that it considered "in making a determination of a just and right division:" "the disparity of earning power of the spouses and their ability to support themselves"; "the earning power, business opportunities, capacities and abilities of the spouses"; "the spouse to whom conservatorship of the children is granted"; "attorney's fees paid during the divorce"; and Jude's $38,000 student loan debt "awarded to him solely since Cynthia Ugwu would not receive the benefit of his increased income from his nursing degree."

As to the parties' earning power and disparity of earning power, the district court found that Jude's net monthly resources amounted to $6,322.99 per month, while Cynthia's were $1,709.62. At the time of trial, both spouses were working multiple jobs. Cynthia testified that she would switch to working her CNA job during the day while the children were at school and also work some weekends in order to be able to care for the children at more regular hours, while her mother and two friends could assist with child care when needed. Jude testified that he would achieve his BSN and RN possibly within a year, which would enable him to pursue a

10

higher paying job. Although Jude argues that Cynthia "has enough income" to maintain her "style of living prior to the divorce," he presents no legal support for this argument, and we conclude that the evidence of the parties' income disparity and earning capacities supports the district court's division of the property.

Jude argues there is no evidence to support a disproportionate division based on conservatorship because (1) there was no evidence that the children's needs could not be met through child support alone and (2) the district court should have considered only the financial needs of the son because the daughter is not Jude's biological child. Because we determined that the district court did not err in complying with Jude's request that his daughter be considered a child of the marriage, Jude's argument that the district court should not have considered his daughter's needs also fails. In considering whether the children's needs could be met through child support alone, we note that the district court granted the parties joint managing conservatorship and gave Cynthia the exclusive right to designate the children's primary residence. Consistent with both parties' contentions that the children should remain in their home, Cynthia was awarded the marital home along with the exclusive right to designate the children's residence, resulting in her receiving a value of $34,877.00 more than Jude. She testified she would refinance the mortgage to be solely in her name and would begin making much-needed repairs that Jude testified would cost around $70,000. Jude testified that in addition to his income, he recently had to withdraw $6,100 from one of his accounts in order to cover living expenses for the children. On this record, we cannot conclude there was no evidence that the children's needs could not be met solely through the payment of $1,580.75 per month in child support.

11

As for attorney's fees, the billing statements for Cynthia's fees were admitted into evidence. Jude had a legal protection plan that he paid for through his job that covered some of his attorney's fees, while Cynthia paid out of pocket. The community estate paid both parties' fees in full, although Cynthia's were about $7,650 higher as a result of her not having a legal protection plan. We conclude that the district court did not abuse its discretion by having the community estate pay for both parties' fees.

With regard to the student loan debt, the district court determined that Cynthia would not receive the benefit of Jude's increased income from his nursing degree, and therefore the debt was awarded solely to Jude. Jude's testimony suggested that some of the student loan debt may have related to Jude's LVN, which he used to work his second job during the marriage, and he argues that his student loans "freed up Jude's income" to pay family expenses. However, Jude also testified that he became an LVN in 2008 and resumed schooling a "few years after that" to pursue his BSN and RN, and he testified that the student loan debt was also for those programs that he has not yet completed. He further testified that the loan money disbursed was to be used for books and other school-related expenses rather than family expenses. We conclude that on these facts the district court did not abuse its discretion in awarding Jude the student loan debt. We overrule Jude's second issue.

**CONCLUSION**

Having overruled Jude's issues on appeal, we affirm the district court's judgment.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   November 27, 2019