# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00018-CV

**Rajeev Gupta, Appellant**

**v.**

**Anuradha Gupta, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 06-10585, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Rajeev Gupta appeals the property division in the trial court's final decree of divorce dissolving the marriage between him and appellee Anuradha Gupta. In three issues, Rajeev contends that the trial court erred by (1) awarding specific corporate or business assets to Anuradha that were legally owned by the parties' family partnership or other corporate entities, (2) failing to properly value portions of his medical practice, and (3) ordering Rajeev to reimburse Anuradha for attorney's and professional fees paid prior to the divorce with community funds. We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Rajeev and Anuradha[1] married on January 3, 1999, and had two children during their marriage. At the time their marriage was arranged, Rajeev was working as a physician in Giddings, Texas, and Anuradha had recently emigrated from India. During the course of the marriage, Rajeev acquired three medical practices in Bastrop, Texas, which he operated under the name Bastrop County Medical Associates, P.A.[2] He also opened Lone Star Imaging, an imaging center in which he and Anuradha were fifty-percent partners, and served as a director of several nursing homes and hospitals. In addition, as they have indicated in their briefing to this Court, the parties created a family partnership and at least two corporate entities to hold and manage their assets; we note, however, that neither party apprised the trial court of the existence of these entities during their testimony, nor did they submit evidence of any partnership agreement or corporate documents.

In March of 2006, Anuradha filed a petition for divorce alleging cruel treatment and fraud on the marriage, among other grounds. On these bases, she sought a disproportionate share of the community estate, as well as attorney's fees. The parties reached a mediated settlement agreement concerning managing conservatorship and support for the children, while the issues concerning the division of the community estate were tried to the court. Both sides submitted to the trial court written proposals for the division of the community estate.

---

[1] To avoid confusion, we will refer to the parties by their first names.

[2] According to the valuation report prepared by Rajeev's expert witness, the practice was incorporated on April 1, 1999; its sole shareholder is Dr. Rajeev Gupta; it "specializes in internal medicine"; and, besides Dr. Gupta, it employs one other physician along with physician assistants and other medical office personnel.

The bench trial lasted five days. One of the primary disputes concerned the valuation of Rajeev's medical practice. Anuradha's expert, Elizabeth Schrupp, concluded that Rajeev's medical practice was worth $1,260,000 on a fair-market-value basis without a marketability discount, or $1,000,000 with a marketability discount, and that after subtracting his personal goodwill, the practice was worth $980,000 without a marketability discount, or $780,000 with a marketability discount. Rajeev's expert, Ken Huff, assessed the fair market value of the practice at $359,000. Rajeev himself opined that the practice was worth only $100,000 or $150,000. Bound up in this dispute was a difference of opinion as to how to evaluate the imaging center and what effect its significant debt service and operating losses should have on the overall valuation of the medical practice.

The trial was completed on December 20, 2007. The following month, the trial court submitted a letter to the parties indicating that it would grant a divorce on the cruelty grounds alleged by Anuradha and disproportionately divide the estate in her favor.

The trial court rendered the final decree of divorce on December 17, 2008, almost a year after the trial had concluded. In its final property division incorporated into the divorce decree, the trial court awarded Rajeev the marital residence and all of its furnishings, a commercial property in Bastrop, the funds on deposit in three accounts at First National Bank, his three life insurance policies, his general partnership interest in Lakeside Hospital, the 2002 Lexus SC430 motor vehicle "in husband's name," and all personal property and effects subject to his sole control. It further ordered that Rajeev be awarded:

The Professional Association known as Bastrop County Medical Associates, P.A., including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

The Bastrop Imaging Center, L.L.C., including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business, **subject to the security agreement attached hereto.**

(Emphasis in original.)

The trial court ordered that Anuradha be awarded all personal property and effects subject to her sole control, the funds on deposit in five separate bank accounts, her single life insurance policy, the parties' 2006 federal income tax refund in the amount of $44,500, her limited partnership interest in Lakeside Hospital, a Certificate of Deposit held at First National Bank, and the sum of $260,000 payable by Rajeev according to the terms of the attached promissory note in order to achieve "an equitable division of the parties' community estate." The trial court further awarded Anuradha:

The individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in the wife's name, including but not limited to [twelve LPL Financial Services accounts].

The 2000 Lexus RX300 motor vehicle in wife's name, together with all prepaid insurance, keys, and title documents.

The trial court further found that Anuradha had $15,333.83 in credit card debt, that Anuradha had incurred attorney's fees totaling $80,546.24, and that Rajeev's attorney's fees totaled

$17,406.62. In keeping with its desire to award Anuradha a disproportionate share of the community estate, the trial court ordered Rajeev to pay Anuradha's attorney's fees.

Rajeev now brings this appeal, arguing that the trial court erred by awarding Anuradha the 2000 Lexus and two of the LPL Financial Services accounts, which were assets of the business and therefore should have been awarded to him; by accepting the inflated valuation of his medical practice offered by Anuradha's expert; and by ordering that he should reimburse Anuradha for attorney's and professional fees paid prior to the divorce using community funds.

## STANDARD OF REVIEW

A trial court has broad discretion in dividing the marital estate, and we presume the trial court exercised its discretion properly. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981). In dividing the community estate, the trial court shall order a division of the property that it deems just and right, having due regard for the rights of each party. Tex. Fam. Code Ann. § 7.001 (West 2006). An appellate court will correct the trial court's division of marital property only when a clear abuse of discretion has been shown. *Murff*, 615 S.W.2d at 698; *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974). A clear abuse of discretion is shown only if the division of property is manifestly unjust. *See Mann v. Mann*, 607 S.W.3d 243, 245 (Tex. 1980). "The party attacking the property division bears the heavy burden of showing that the trial court's property division was not just and right." *Pletcher v. Goetz*, 9 S.W.3d 442, 445 (Tex. App.—Fort Worth 1999, pet. denied) (op. on reh'g).

The division of the community estate need not be equal, but it should be equitable. *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). The trial court's discretion to divide the community estate is broad, but it is not without limits. *Id.* The trial court

5

must have some reasonable basis for an unequal division of the property, *see id.*, considering evidence of such factors as: (1) fault in breaking up the marriage; (2) the spouses' capacities and abilities; (3) business opportunities; (4) education; (5) relative physical conditions; (6) relative financial conditions and obligations; (7) disparity of ages; (8) sizes of separate estates; (9) the nature of the property; and (10) disparity in earning capacities or incomes, *see Murff*, 615 S.W.2d at 699.

Under an abuse-of-discretion standard in a family law case, legal and factual insufficiency are not independent grounds for reversal, but are instead relevant factors in assessing whether the trial court abused its discretion. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.); *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex. App.—Houston [1st Dist.] 1993, no writ). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support its decision, we engage in a two-pronged inquiry, considering (1) whether the trial court had sufficient evidence upon which to exercise its discretion and (2) whether it erred in its application of that discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied); *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied). Under the first prong, we apply the traditional sufficiency standards and then proceed to determine whether, under the second prong, the trial court's decision was arbitrary or unreasonable. *Zeifman*, 212 S.W.3d at 587.

The trial court acts as fact finder in a bench trial and is the sole judge of the credibility of witnesses. *See Murff*, 615 S.W.2d at 700. Accordingly, the trial court may consider all the facts and circumstances in connection with the testimony of each witness and accept or reject all or part

6

of that testimony; an appellate court may not substitute its judgment for the trial court's assessment of testimony in a bench trial. *See In re W.E.R.*, 669 S.W.2d 716, 716-17 (Tex. 1984).

## DISCUSSION

In his first issue, Rajeev argues that the trial court erred in awarding Anuradha certain "corporate assets" in its division of the community estate. Specifically, he argues that the trial court erred in determining that the 2000 Lexus RX300 vehicle was in Anuradha's name, when it was in fact owned by his medical practice, Bastrop County Medical Associates, P.A. Accordingly, he asserts, the trial court erred in awarding the vehicle to Anuradha because it should have been awarded to him along with all other fixtures, equipment, inventory, and assets of the business. Similarly, Rajeev argues that the trial court erred in awarding two LPL Financial Services accounts to Anuradha because those accounts actually belonged to the RA Gupta Family Partnership and RA Gupta Enterprise, LLC.

Anuradha responds on appeal that such error, if any, is harmless and was waived on the grounds that (1) *both* parties' proposed property divisions requested that the cars be awarded as the trial court ordered; (2) neither party submitted evidence of any corporate or partnership ownership of community assets, let alone evidence of the existence of the partnership or corporate entities; (3) Rajeev's proposed property division referred to a "global 'investment portfolio' without delineating that the twelve accounts therein included variously: college § 529 accounts, rollover IRAs, trust accounts for the children, annuities, simplified pension plans, 401(k), LLC, and Partnership accounts"; and (4) no objection was made or testimony was offered putting the trial court on notice "that there should have been more specificity in awards of corporate accounts." We agree.

7

In view of the entire record, we conclude that Rajeev has not demonstrated that the trial court abused its discretion in awarding these assets to Anuradha. At no point during the trial proceedings did Rajeev argue that either the Lexus or the LPL Financial Services accounts were corporate business assets that should not have been included in the division of the marital property. On the contrary, he included these and other assets—including the commercial lot and the Lexus that was awarded to him—in his proposed property division, representing to the trial court that they were community property assets. Having failed to apprise the trial court that these assets were anything but community property, or even inform the court of the existence of the corporate or partnership entities, Rajeev cannot now obtain reversal of the property division on this basis, which he failed to assert either by a motion for new trial or motion to amend or correct the judgment. *See* Tex. R. App. P. 33.1(a). We overrule Rajeev's first issue.

In his second issue, Rajeev complains that the trial court, in relying on the testimony of Anuradha's expert, Elizabeth Schrupp, failed "to take into account the value, or lack thereof, of portions of the medical practice." He argues that although Schrupp "presented estimates of value for the medical practice based upon legitimate methodologies," her conclusions were "corrupted with subtle and sometimes insupportable assumptions or assertions of fact." On appeal, he takes issue with the following: Schrupp's failure to compare Rajeev's rural medical practice to other rural practices in central Texas; her failure to visit Rajeev's medical practice, interview his staff, or examine his equipment; her erroneous classification of his practice as a "specialty medical practice," instead of a "general physician" office; and, most importantly, her failure to consider or factor in the losses and expenses of the imaging center.

8

Initially, we note that Rajeev does not characterize his issue on appeal as a challenge to the sufficiency of the evidence supporting the trial court's implied findings regarding the value of the medical practice,[3] nor does he frame it as a challenge to the reliability of the expert's testimony. In substance, however, the first several "deficiencies" that he mentions in his brief are indeed challenges to the underlying methodology, technique, or foundational data that Schrupp used in formulating her opinion of the value, and therefore his failure to object at trial results in the waiver of these complaints. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). As to his argument that Schrupp failed to properly evaluate the imaging center, which we construe as a challenge to the sufficiency of the evidence supporting the trial court's determination of the value of the medical practice, we hold that the evidence is legally and factually sufficient.

Schrupp testified extensively and without objection regarding her valuation of Rajeev's medical practice, providing a detailed analysis of her methods and the figures on which she relied. With respect to the imaging center, she testified that she analyzed the financial information and "corrected some bookkeeping errors" and inaccurate balance sheets that contradicted the income statements she was given in an effort to show its "true financial condition."[4] In addition to her

---

[3] Neither party requested—and the trial court did not make—findings of fact as to the value of any specific property. On appeal, Rajeev asserts that the trial court adopted Anuradha's expert's opinion of value based on the letter that the court submitted to the parties after the trial. In that letter, the court indicated that, of the $1,162,812.66 in community assets that it intended to award Rajeev, $780,000 was attributable to the medical practice. It further noted that the value attributable to the imaging center was "-0-."

[4] Schrupp testified regarding some of the adjustments that she made in her analysis of the imaging center:

9

primary report explaining her valuation of the medical practice, Schrupp submitted a separate report

explaining her analysis of the imaging center and dedicated a section of her rebuttal to the report of

Rajeev's expert, Huff, highlighting the errors that he had made in evaluating the imaging center.[5]

> The first thing I did was to—looking at the other statements I noticed that all the revenue wasn't booked so I added that. Then the second thing I did was I added accounts receivable because we know accounts receivable will kick in. And you also have to remove prior receivables out of the revenue. So it's a wash on the revenue side, but what it does is it adds $132,000 to the book value because it's an asset. Again, I got that off the subsequent months' collections.
>
> The other thing I noted that his fixed assets, he didn't record the full value of the imaging machine. And I don't know why, but according to Weis it's—the imaging machine is 1.2 million and not 1 million 52 thousand. So I increased that as well to show the full amount, which ties to the contract.
>
> I then basically got rid of the tax accumulated depreciation and recorded GAAP using a 15 percent salvage value, which is common, what everybody does. . . .

Schrupp also explained that the advantage of the imaging center from a financial standpoint is not only in the revenues it generates, but in the benefit it brings in to his medical practice:

> In this center—a lot of doctors get these centers because—we call them loss leaders in stores. For example, Wal-Mart will go come in and get this great baby doll that's only $5 and everybody else is selling it for 10. Chances are, they paid 8 for it. So they're losing money, but they don't care because you're coming to their store. . . .
>
> A lot of doctors have these imaging centers to break even because they can utilize it in their medical practice, as well as from the hospital. And so a lot of times they don't cash flow, and especially in a smaller town it's not going to significantly cash flow.

[5] Schrupp testified as follows regarding the imaging center:

> Q.    And did you also do some analysis or—did you analyze the imaging center also?

10

Ultimately, Schrupp concluded that although the imaging center was currently losing "maybe a couple thousand in net right now," she expected that it would be breaking even within a few years.

In making its determination of a just and right division of the marital estate, the trial court was the sole judge of the witnesses' credibility and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The trial court was free to accept or reject the testimony of each expert in whole or in part and to resolve any inconsistencies in the testimony. *Id.* at 697. There is no abuse of discretion if the trial court's decision is based on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998). Thus, to the extent that the

---

A. I looked at the information that you sent me and kind of corrected some bookkeeping errors.

Q. But did you do a valuation for the imaging center?

A. It's not really a valuation as much as just analyzing it and correcting it to show the true financial condition.

. . . .

A. The next thing is the book value and financial condition, and that's out of his report. And he looked at it. He attached one year balance sheet. Well, most recognized authorities suggest that you have at least five, three years of balance sheets at a minimum. Well, he had one year. And if you look at the balance sheet he used it didn't even tie to the tax return. As a matter of fact, it had debts in there that were related to a whole different legal entity, which, obviously, made the company appear to be worth less.

Q. You're talking about the imaging center?

A. Right. He had the imaging center look like a payment or a down payment recorded as a debt on his books of the company. So he didn't even do a proper analysis of that. He did show income statements, but he did not actually show the balance sheets.

11

trial court accepted Schrupp's testimony and rejected that of Rajeev and Huff, it acted within its discretion in making a just and right division of the marital estate.

Further, in a divorce proceeding, the ultimate and controlling issue is whether the trial court divided the property in a "just and right manner" pursuant to the family code. *See* Tex. Fam. Code Ann. § 7.001; *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 7 (Tex. App.—Waco 2002, no pet.); *Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex. App.—Houston [1st Dist.] 1995, writ denied). How the trial court valued specific property is *not* an ultimate issue. *Rafferty*, 903 S.W.2d at 376; *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ). One who complains of the way the trial court divided the community property must be able to show from the evidence in the record that the *overall division* is so unjust and unfair as to constitute an abuse of discretion. *Finch*, 825 S.W.2d at 221. Although Rajeev has argued that his medical practice should have been valued at less than $780,000, he has not demonstrated that this allegedly inflated value resulted in a manifestly unjust division of the marital estate. Nor does he challenge the substantial evidence supporting the trial court's decision to award a disproportionate share of the property in favor of Anuradha.[6] Because there is probative and substantive evidence in the record that supports the trial court's order, we conclude that the trial court did not abuse its discretion in dividing the marital estate. *See Zeifman*, 212 S.W.3d at 587. We overrule Rajeev's second issue.

---

[6] The trial court heard evidence tending to show that Rajeev was at fault for the break-up of the marriage, was more educated than Anuradha, and had significantly greater earning capacity and business opportunities. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). There was also legally and factually sufficient evidence to support the trial court's finding that Rajeev was guilty of cruel treatment, the ground on which the trial court granted the divorce in favor of Anuradha.

In his third issue, Rajeev argues that the trial court erred by adjudicating that he should reimburse Anuradha for attorney's and professional fees that were paid prior to the divorce using community funds. It is undisputed that Anuradha paid approximately $80,000 for attorney's fees and related expenses with community funds prior to the divorce. Rajeev does not challenge the reasonableness or necessity of this amount. He does argue, however, that the trial court erred by ordering him to reimburse Anuradha for the entire $80,000 amount, rather than just his community share of these expenses. By ordering him to pay the entire amount, Rajeev urges, the trial court's divorce decree does not reflect the 60/40 division that the trial court actually intended.

As an initial matter, we note that Rajeev's brief fails to cite any authority in support of his third issue. An appellate issue unsupported by citation to legal authority presents nothing for the appellate court to review and waives a complaint of any alleged error. *See General Servs. Comm'n v. Little-Tex. Insulation Co.*, 39 S.W.3d 591, 598 n.1 (Tex. 2001). Moreover, it does not appear that Rajeev raised any complaint about the attorney's fee award at trial; he may not, therefore, raise it for the first time on appeal. Tex. R. App. P. 33.1; *see In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) (failure to raise complaint at trial waives review of complaint on appeal).

Even if we considered the complaint raised in Rajeev's third issue, he has still not shown that the trial court clearly abused its discretion in ordering him to reimburse Anuradha's attorney's fees. In making this argument, he relies on a letter that the trial court submitted to the parties after trial, but before judgment, indicating that it would grant the divorce on the ground of cruel treatment and providing its estimation of the value of the community assets. The letter concluded with the following "recap" illustrating how the court planned to divide the property:

13

| | | |
|---|---|---|
| Value of Assets to Wife | 1,166,185.25 | |
| Less Liabilities | 15,333.83 | |
| Net to Wife | 1,150,851.42 | (Approximately 60%) |
| | | |
| Value of Assets to Husband | 1,162,812.66 | |
| Less Liabilities[*] | 357,952.86 | |
| Net to Husband | 804,859.80 | (Approximately 40%) |

\* Liabilities to Husband consist of the 260,000 Note payable to Wife as well as both parties' attorney's fees.

A pre-judgment letter to the parties "is not competent evidence of the trial court's basis for judgment," and the statements contained therein do not constitute fact findings. *Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990) (observing that trial court "could have disregarded the evidence at the time judgment was actually signed"); *Mondragon v. Austin*, 954 S.W.2d 191, 193 (Tex. App.—Austin 1997, pet. denied) (pre-judgment letter "cannot constitute findings of fact and conclusions of law"); *see also Gulf States Utils. Cos. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002) (appellate court should review judgment "that can be rendered from the pleadings, evidence, and verdict," not based on letter from trial court). Here, the trial court was not bound to render judgment effectuating a "60/40 split" of the community estate merely because it had indicated that it might do so in its letter.

Thus, while Rajeev may indeed be correct that the trial court's order giving Anuradha a "double award" for her attorney's fees caused the actual division of property to deviate from a 60/40 split, he has neither argued nor established that this resulted in an unjust division of the overall marital estate in light of the trial court's judgment granting Anuradha a disproportionate share of the

community estate. *Cf. Eikenhorst v. Eikenhorst*, 746 S.W.2d 882, 890 (Tex. App.—Houston [1st Dist.] 1988, no writ) (rejecting appellant's claim for reimbursement of attorney's fees previously paid out of community estate and affirming further fee award in favor of appellee; "Although it is not clear from the record in this case that the trial court took into consideration the prior payment of $14,000 in attorney's fees when it made a division of the property, it is also not clear from the court's findings of fact and conclusions of law or in the trial court's judgment that it did not take the payment into consideration in making its division."). We overrule Rajeev's third issue on appeal.[7]

## CONCLUSION

Having overruled Rajeev's appellate issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Filed: June 24, 2010

Affirmed

---

[7] In explaining the context for his third issue, Rajeev makes a passing reference to the trial court's alleged reliance on improper, unsworn testimony from Anuradha's attorney and erroneous designation of the balance of a certificate of deposit that it intended to award to Anuradha. Because his brief does not characterize these as appellate issues or seek reversal of the judgment on these bases, however, we will not address such issues.