NUMBER 13-09-00105-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

                                  CORPUS
CHRISTI - EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



MARIBEL
REYES,                                                                         Appellant,

 

v.

 

LUIS
REYES III,                                                                              
Appellee.

 

 



On appeal from the 92nd District Court

of Hidalgo County, Texas.

 

 



  MEMORANDUM OPINION

 

Before Chief Justice Valdez and Justices Rodriguez
and Garza

Memorandum Opinion by Chief Justice
Valdez

 

Appellant, Maribel Reyes,
challenges the trial court’s final decree of divorce.   By four issues, Maribel
contends that:  (1) the trial court abused its discretion by dividing the
marital estate disproportionately in favor of appellee, Luis Reyes III; (2) the
trial court erred in setting child support; (3) the trial court abused its
discretion in ordering the child possession order; and (4) the trial court
abused its discretion in setting a geographic restriction.  We reverse and
remand, in part, and affirm, in part.

I.          Background

            Maribel and Luis were married on April 21, 1990,
and had their only child on December 16, 1999.  In 2001, Maribel filed for divorce
on grounds of insupportability and cruel treatment.  Maribel requested that she
be appointed sole managing conservator of the child, that the trial court award
her a disproportionate share of the marital estate, and that the trial court
grant spousal maintenance.  Maribel also requested relief of an attachment of
the body of the child and the issuance of an order taking the child into her
possession.  Maribel asserted causes of action for assault and intentional
infliction of emotional distress.  In her amended petition for divorce, Maribel
requested back child support and asserted claims of breach of fiduciary duty
and fraud.

Luis filed a counter-petition for
divorce on the grounds of insupportability, cruel treatment, and intentional
infliction of emotional distress.  Luis requested that the marital estate be
divided in a manner the trial court deemed just and right and that he be
appointed the child’s managing conservator with the exclusive right to
determine the primary residence of the child without regard to geographic
location or, in the alternative, that the residence of the child be restricted
to Hidalgo County.

A bench trial was held on January
15 and 16, 2008.  The trial court admitted an inventory and appraisement of
marital property from Maribel and one from Luis, and each testified regarding
the values they attributed to each item listed.  Both parties agreed that the
following items were part of the marital estate:  (1) a home on Date Palm Drive
in Mercedes, Texas; (2) cash in a Texas State Bank account in Luis’s name; (3)
a Ford F150 truck; (4) a 1993 Freightliner truck; (5) a 1978 Luftkin dump
trailer; (6) a Dargel boat; (7) a 2001 backhoe; (8) a four-wheeler; (9) two
utility trailers; (10) furniture in Maribel’s possession and furniture in
Luis’s possession; and (11) a 2007 Lexus IS250.  In addition to these items,
Maribel claimed the following items were also part of the marital estate:  (1)
real property built on Pleasantview Drive using community funds[1]; (2) fifteen
acres of land adjacent to the real property on Pleasantview Drive in Weslaco,
Texas; (3) a Wells Fargo bank account in Maribel’s name; (4) three Harley
Davidson motorcycles; (5) a 1989 Buick Skyhawk sedan; (6) an interest in the
sole proprietorship of “O.M.T. Transportation and/or O.M.T. Utilities”; (7) a gold
coin collection; (8) a five-hundred-dollar bill; (9) a gun collection; (10)
Maribel’s wedding band, Rolex watch, and other assorted jewelry; and (11) three
cemetery lots at Highland Memorial Cemetery in Weslaco, Texas.

Maribel also sought reimbursement
of $244,400 against Luis’s separate estate for the following:  (1) community
funds used to add value to the property at 1906 Pleasantview Drive; (2) Luis’s
alleged “waste of community assets”; and (3) Luis’s alleged “use of community
funds to purchase real property and put it in his mother’s and sister’s names.” 
Maribel listed several community liabilities of credit card debt in her name.

On direct examination by Maribel’s
attorney, Luis testified that although he listed the property on Date Palm
Drive as a community asset, he considered that house to be Maribel’s because
she bought the house after they separated.  Luis acknowledged that he had
$6,297 in his bank account.  Luis did not know the value of the following
items:  (1) Ford F150 truck; (2) Freightliner; (3) Lufkin dump trailer and
truck; (4) Dargel boat; (5) backhoe; (6) two four-wheelers; and (7) three
utility trailers.  Luis stated that he acquired his home at 1906 Pleasantview
Drive as a gift from his grandmother and that his grandfather turned a garage
on the property into a home.  Luis claimed that improvements in the amount of
$5,000 were made to the property while he was married to Maribel.  Luis
admitted that he had purchased and sold various vehicles during the marriage
but that he had not included those items in his inventory and appraisement.

Luis stated that he only had two
dirt bikes and that he did not own any other motorcycles.  Luis denied ever
owning a Harley Davidson motorcycle.  However, Luis claimed that as a hobby, he
enjoyed repairing motorcycles for his friends although, in many cases, he was
unable to do the repairs; therefore, he would take the bikes to the Harley
Davidson shop for repairs.  According to Luis, one of his friends from Mexico
owns eight Harley Davidson bikes and is unable to cross the border to take
these bikes to the shop for repairs; so, Luis takes the bikes in for repairs. 
The trial court admitted plaintiff’s exhibit number eight, a repair bill
showing that Luis had paid $2300 to repair the transmission on a blue Harley
Davidson bike in 2003.  Luis acknowledged that he had taken the bike in for
repairs and that he had paid cash, but insisted that his friend, Carlos
Delgado, owned the bike.  Luis explained that he did not mind paying for
repairs in cash or on his credit card on behalf of his friends and family who
he knew would pay him back.  Luis acknowledged that he also took a red Harley
Davidson and a green Harley Davidson bike in for repairs and paid the amount
due with his credit card.

Luis denied that he threatened
Maribel with a gun.  Luis acknowledged that Maribel may have sought a restraining
order against him, but denied that a restraining order had ever been issued
against him.  Luis also claimed that Maribel “took custody” of the child. 
According to Luis, he had possession of the child “[e]ver since [Maribel] left
in 2001” until 2004 when “that judge signed that paper and gave [Maribel]
authority over [the child].”  When asked if he had committed family violence
against Maribel, Luis stated that he had never been arrested or charged with
that crime.  Maribel’s counsel then stated, “Well, the question I asked you
was, did you ever commit family violence against [Maribel]?  Did you ever hit
her?”  Luis responded, “Not that I recall, no.  Maybe pushed her off of me if
she were to attack me or something, but hit her, no.  I would guarantee you I’d
be in jail or I would have been in jail, arrested.  She’s called the cops on me
a lot of times, but I’ve never been locked up.”

Luis agreed that he had net
resources of approximately $70,000 despite the fact that on his tax returns, he
claimed that his amount of income in 2004 was negative $1,255 and in 2006 was
$500.  Maribel’s attorney presented evidence that Luis purchased a 1999 Toyota
Corolla for $1,600 that had been registered to Luis’s friend, Edith Cadena. 
Luis explained that Cadena had given him cash to purchase the vehicle and that he
had then written a check.

On cross-examination, Luis
testified that since the petitions for divorce had been filed in 2001, he had
not resided with Maribel.  According to Luis, even before the divorce had been
filed, Maribel “went and came as she pleased.”  Luis accused Maribel of having
a boyfriend the entire time they had been married.  Luis acknowledged that in
his petition for divorce, he stated that he and Maribel ceased living together
as husband and wife on October 15, 2001.

On re-direct examination, Luis
admitted that he had used drugs when he went through depression; however,
according to Luis, he had never been addicted to drugs or ever been to rehab. 
Luis testified that it had been “years” since he had used drugs.  Luis did not
recall writing a letter to Maribel stating that he had used cocaine on Father’s
Day in 2002 or 2003.

Maribel testified that she filed
for divorce in March 2001 and that she asked for an emergency writ of
attachment because Luis allegedly “showed up” at her residence at 2:00 a.m.
threatening to kill her with a gun.  Maribel stated that the child was crying
on the bed until 4:00 a.m.  Maribel testified that she left home during the
marriage because Luis allegedly committed family violence against her by
threatening her, choking her, and spitting in her face.  Maribel claimed she
filed between fifteen and twenty police reports concerning the family violence.

Maribel stated that she denied Luis
access to the child on Father’s Day in 2002 or 2003 because she discovered that
Luis possessed cocaine, and he sent her a letter stating that he was using
drugs.[2] 
According to Maribel, Luis “has a habit of hanging around with the wrong crowd”
and has “dealt” drugs before.  Maribel stated that “a certain individual who
has happened to kill someone two years ago in Weslaco” had threatened Luis’s
life.  Maribel testified that Luis has taken the child to bars.  Maribel
claimed that she had to apply for a protective order against Luis in 2004
because “he kept harassing” her while she was at a Christmas party and stated,
“Thank God you parked in the back because if I get to you, this and this and
that.”  On another occasion, Luis allegedly harassed Maribel again and made
several threats, stating “that Thank God that you parked at this parking lot
over here because—right under the light because if you come out, I’m going to
do this and this and that, several threats.”  Maribel testified that the court
granted the protective order.

Maribel testified that Luis had
three Harley Davidson motorcycles worth $60,000 and that Luis’s business is
worth “at least” $150,000.  Maribel based the value of the business on Luis’s
financial records, his equipment, and the profits he has received from it.[3]  According to
Maribel, Luis failed to account for several items that he has acquired during
the marriage in his inventory, including among other things, a red
tractor-trailer that he recently sold, a gun collection, and a gold coin
collection.  Maribel testified that the gold coin collection is worth
approximately $6,000 and that the gun collection is worth approximately $15,000.

After hearing the evidence, in its
final decree of divorce, the trial court granted the couple’s divorce on the
ground of insupportability, appointed Maribel and Luis joint managing
conservators of the child, ordered that the child’s primary residence be in
Hidalgo County, Texas,[4]
established the parents’ possession and access to the child, ordered Luis to
pay $500 per month in child support, and divided the marital estate.

Maribel filed a request for
findings of fact and conclusions of law and when the trial court failed to
issue them, she filed a notice of past due findings of fact and conclusions of
law.  The trial court did not issue any findings of fact or conclusions of
law.  This appeal ensued.

On August 20, 2010, Luis filed with
this Court a motion to abate the appeal and remand to the trial court for entry
of findings of fact and conclusions of law.  Maribel filed a response stating
that she was unopposed to such motion.  On August 31, 2010, this Court abated
the appeal and remanded the case to the trial court so that it could issue
findings of fact and conclusions of law.  The trial court’s findings of fact
and conclusions of law were filed in this Court in a supplemental clerk’s
record on November 15, 2010.

II.         Division of the Marital Estate

            By her first issue, Maribel contends that the
trial court abused its discretion by its disproportionate division of the
marital estate in favor of Luis.  She argues that the disproportionate division
was manifestly unjust and requires reversal.  Luis has not filed a brief in
this case.

A.        Standard of Review and Applicable Law

            We review a trial court’s division of property
under an abuse of discretion standard.  Murff v. Murff, 615 S.W.2d 696,
698 (Tex. 1981).  A trial court has wide latitude in the exercise of its
discretion in dividing marital property in a divorce proceeding, and that
division will not be overturned on appeal unless the trial court has abused its
discretion.  Id.; Zieba v. Martin, 928 S.W.2d 782, 786 (Tex. App.–Houston
[14th Dist.] 1996, no writ); Dankowski v. Dankowski, 922 S.W.2d 298, 304
(Tex. App.–Fort Worth 1996, no writ). The mere fact that a trial judge may
decide a matter within his discretionary authority differently than an
appellate judge is not an abuse of discretion.  Jones v. Jones, 804
S.W.2d 623, 624 (Tex. App.–Texarkana 1991, no writ) (citing Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985)).  To constitute an
abuse of discretion, the trial court’s division of the property must be
manifestly unfair.  Mann v. Mann, 607 S.W.2d 243, 245 (Tex. 1980); Vandiver
v. Vandiver, 4 S.W.3d 300, 303-04 (Tex. App.–Corpus Christi 1999, pet.
denied).

            The trial court shall in its divorce decree
order a division of the marital estate in a manner that it deems just and
right.  Tex. Fam. Code Ann. §
7.001 (West 2006).  The trial court is not required to divide the marital
estate equally; however, its division must be equitable.  Zieba, 928
S.W.2d at 790.  “The trial court’s discretion is not unlimited, and there must
be some reasonable basis for an unequal division of the property.”  O'Carolan
v. Hopper, 71 S.W.3d 529, 532 (Tex. App.–Austin 2002, no pet.).  In
deciding whether a reasonable basis exists for an unequal division of the
marital estate, the trial court may consider “such factors as the spouses'
capacities and abilities, benefits which the party not at fault would have
derived from continuation of the marriage, business opportunities, education,
relative physical conditions, relative financial condition and obligations,
disparity of ages, size of separate estates, and the nature of the property.”  Murff,
615 S.W.2d at 699.

B.        Discussion

In its final decree of divorce, the
trial court stated that it divided the marital estate in a manner it deemed
just and right.  However, the final judgment does not state the values of any
of the property divided and does not set out the amount of the debt each party
is responsible for paying.  Instead, the values of some of the property were
included in the trial court’s findings of fact.  Although the trial court did
determine the values of some of the property awarded to each party in its
findings of fact, it did not provide values for all of the property awarded,
and many of the values were merely based on Maribel’s assertions at trial.  In
its findings of fact, the trial court determined that the values of the
property it divided are as follows:


 
 
 Luis’s interest in the 15 acre tract of land
 
 
 $20,000.00
 
 
 
 
 Luis’s furniture
 
 
 $500.00
 
 
 
 
 Maribel’s furniture
 
 
 $7,000.00
 
 
 
 
 Cash
 
 
 $9,153.00
 
 
 
 
 Three Harley Davidson motorcycles
 
 
 $60,000.00
 
 
 
 
 Ford F150 truck
 
 
 $27,000.00
 
 
 
 
 O.M.T. and the equipment used in the business
 
 
 $150,000.00
 
 
 
 
 Dargel boat
 
 
 $2,500.00
 
 
 
 
 Gun collection
 
 
 $15,000.00
 
 
 
 
 Gold coin collection and $500 bill
 
 
 $6,500.00
 
 
 
 
 Equity in the property on Date Palm Drive
 
 
 $8487.32
 
 
 
 
 Vehicles and trailers in Luis’s possession
 
 
 $7,600.00
 
 
 
 
 Grizzley Camouflage 4x4 4-wheeler
 
 
 Unknown value
 
 
 
 
 Maribel’s IRA[5]
 
 
 Unknown value
 
 
 
 
 Vehicles in Maribel’s possession
 
 
 Unknown value
 
 
 
  
 
 TOTAL VALUE OF MARITAL
 ESTATE:
 
 
 $313,740.32
 
 
 
 
 
 
 


 

Based on these findings, the value of the marital estate
actually divided in the judgment was $313,740.32.

The trial court awarded Luis the
property on Pleasantview Drive as his separate property.  The trial court
awarded Luis the following marital property[6]:


 
 
 His interest in the 15 acre tract of land
 
 
 $10,000.00[7]
 
 
 
 
 Furniture in his possession
 
 
 $500.00
 
 
 
 
 Cash in his possession 
 
 
 $9,153.00
 
 
 
 
 Harley Davidson motorcycles
 
 
 $60,000.00
 
 
 
 
 The Ford F150 truck
 
 
 $27,000.00
 
 
 
 
 Vehicles and Trailers
 
 
 $7,600.00
 
 
 
 
 The business known as O.M.T.
 Transportation and/or O.M.T. Utilities and equipment
 
 
  
 $150,000.00
 
 
 
 
 Dargel boat
 
 
 $2,500.00
 
 
 
 
 Grizzley Camouflage 4x4 4-wheeler
 
 
 Unknown
 value
 
 
 
 
 Gun collection
 
 
 $15,000.00
 
 
 
 
 Gold coin collection and $500
 bill
 
 
 $3,500.00[8]
 
 
 
  
 
 TOTAL AWARDED TO LUIS:
 
 
 $285,253.00
 
 
 
 
 
 
 


 

Maribel received the following
marital property:

 


 
 
 Maribel’s interest in the 15
 acre tract of land
 
 
 $10,000.00
 
 
 
 
 Maribel’s interest in the gold
 coins and $500 bill
 
 
 $3,000.00
 
 
 
 
 Palm Date property
 
 
 Equity
 of $8487.32 
 
 
 
 
 Furniture in Maribel’s
 possession 
 
 
 $7,000.00
 
 
 
 
 Clothing, jewelry, and other
 personal effects in Maribel’s possession
 
 
  
 Unknown
 value
 
 
 
 
 Cash in Maribel’s possession
 
 
 Unknown
 value
 
 
 
 
 Maribel’s IRA
 
 
 Unknown
 value
 
 
 
 
 All motor vehicles in Maribel’s
 possession
 
 
 Unknown
 value
 
 
 
  
 
 TOTAL
 AWARDED TO MARIBEL:
 
 
 $28,487.32[9]
 
 
 
 
 
 
 


 

According to the trial court’s findings of fact, it appears
that Luis received $285,253.00 of the marital estate and Maribel received $28,487.32.[10]  Therefore, Maribel
received 9% of the marital estate and Luis received 91% of the marital estate. 
Accordingly, based on the trial court’s findings of fact, the trial court divided
the marital estate disproportionately in favor of Luis.

            In its conclusions of law, the trial court
stated that Luis did not request a disproportionate division of the community
estate.  And, upon our review of the trial court’s findings of fact and
conclusions of law and the record before us, we find nothing to support an
unequal division of the property in Luis’s favor.  See O'Carolan, 71
S.W.3d at 532.

            Although Luis alleged in his counter petition
for divorce that Maribel was guilty of cruel treatment toward him, the trial
court did not make any findings that would support such a conclusion and it did
not draw such a conclusion from the findings it did make.[11]  See Murff,
615 S.W.2d at 699 (setting out the factors the trial court may consider when
awarding a disproportionate share of the marital estate to one party).  The
parties’ ages were roughly the same, and there was no evidence that Luis had
any physical or mental disabilities warranting an unequal division of the
marital estate.  See id.  There is no evidence that Maribel had a
separate estate, but the trial court concluded that Luis had a separate estate
with a value between $40,000 and $45,000.  See id.  The record shows
that Luis had a significantly higher income, earning capacity, and business
opportunities, which are important factors to consider when dividing the
marital estate.[12] 
See id.  Disparity in earning capacity is generally a factor weighing in
favor of awarding a disproportionate share of the community property to the
lower income earner—here, Maribel.  O'Carolan, 71 S.W.3d at 532-33.  The
couple had one child who was to live with Maribel—therefore, there was no
evidence that the needs of the child provided the basis for the
disproportionate award of the marital estate.  Finally, there is no evidence
that the nature of the property compelled an unequal distribution, especially
considering that Luis did not request an unequal distribution of the marital estate. 
Murff, 615 S.W.2d at 699.

            The trial court did not make any findings of
fact or issue any conclusions of law regarding its basis for the unequal
division of the marital estate in favor of Luis.  Moreover, because Maribel and
Luis were still married, assuming the trial court took the separation into
consideration, the property they continued to acquire between the date of
separation and divorce was still considered community property, unless either
party could establish that the property was separate property.  Wilson v.
Wilson, 44 S.W.3d 597, 601 (Tex. App.–Fort Worth 2001, no pet.).  Luis
provided no evidence that the property acquired after the separation was his separate
property.  See Tex. Fam. Code
Ann. § 3.001 (West 2006) (providing that separate property includes:  (1)
property owned or claimed by either spouse before marriage; (2) property
acquired during marriage by gift, devise, or descent; and (3) recovery for
personal injuries, except for loss of earning capacity).  Moreover, the trial
court did not make any findings to support a conclusion that the property
should be unevenly divided because the couple had been separated.

Therefore, we cannot conclude that
there is a reasonable basis for the unequal division of the property in favor
of Luis in this case.  See O'Carolan, 71 S.W.3d at 532.  Accordingly, we
conclude that the trial court’s judgment was manifestly unfair, and it abused
its discretion in its division of the marital estate.  See id. at
532; Mann, 607 S.W.2d at 245; Vandiver, 4 S.W.3d at 303-04.  We
sustain Maribel’s first issue.

III.        Child Support

            By her second issue, Maribel contends that the
trial court reversibly erred by deviating from the child support guidelines
without justification.  Maribel argues that the evidence conclusively supports
a $1,000 per month child support obligation.

A.        Standard of Review and Applicable Law

We review a trial court's order of
child support under an abuse of discretion standard.  Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990); Smith v. Smith, 143 S.W.3d 206, 217
(Tex. App.–Waco 2004, no pet.) (applying the abuse of discretion standard to a
trial court's downward deviation from child support guidelines).  In deciding
whether a trial court has abused its discretion, we must determine whether the
court acted without reference to any guiding rules and principles.  Downer,
701 S.W.2d at 241-42.

Section 154.130 of the family code
requires a trial court ordering child support that varies from the amount
computed by applying the percentage guidelines to make certain findings including: 
(1) whether the application of the guidelines would be unjust or inappropriate;
(2) the net monthly resources of the obligor and obligee; (3) the amount of
support that would result if the guidelines were followed; (4) the percentage
applied by the court to the obligor's net monthly resources that yields the
child-support obligation set by the court; and (5) the specific reasons why the
amount ordered by the court varies from the amount called for by application of
the guidelines.  Tex. Fam. Code Ann.
§ 154.130(a)(3), (b) (West Supp. 2010); In re S.B.S., 282 S.W.3d 711,
717 (Tex. App.–Amarillo 2009, pet. denied).  Such findings are mandatory and
the failure to make them when required constitutes reversible error.  In re
S.B.S., 282 S.W.3d at 717.

B.        Discussion

Here, Maribel timely filed her
request for findings of fact and conclusions of law.  After this Court abated
the case and remanded it to the trial court, the trial court filed its findings
of fact and conclusions of law.[13] 
In the findings of fact, the trial court found that Luis’s “gross income for
2006 was $87,459.04 and his net monthly available resources is $5,002.83, which
would result in a child support amount of $1,000.”  This amount follows section
154.125(b)’s guideline providing that an obligor who has one child should pay
child support equal to twenty percent of the obligor's net resources.  See
Tex. Fam. Code Ann. § 154.125(b)
(West Supp. 2010).  However, in its judgment, the trial court ordered Luis to
pay $500 per month in child support.  Therefore, in its judgment, the trial
court varied from the amount computed by applying the percentage guidelines.  See
id.  However, the trial court failed to make findings pursuant to section
154.130 regarding the monthly resources of obligee, the percentage applied by
the court to the obligor’s net monthly resources that yielded the child-support
obligation set by the court, and the specific reasons why the amount
ordered by the trial court varied from the amount called for by application of
the guidelines.  See Tex. Fam.
Code Ann. § 154.130(a)(3), (b) (emphasis added).

Because the trial court failed to
make these required findings, we conclude that the trial court abused its
discretion.  See Worford, 801 S.W.2d at 109; Smith, 143 S.W.3d at
217.  Accordingly, we sustain Maribel’s second issue.

IV.       Child Possession Order

            By her third issue, Maribel contends that the
trial court abused its discretion in its possession order.  She argues that the
trial court’s order deviated from the standard possession order as provided by
sections 153.311 through 153.317 of the family code.

            Although Maribel cites these sections of the
family code, she provides no authority stating that a trial court abuses its
discretion by modifying or deviating from the standard possession order. 
Therefore, she has not met her burden of showing that the trial court abused
its discretion in this case.  See Tex.
Fam. Code Ann. § 153.256 (West 2008) (providing that a trial court may
deviate from the standard possession order depending on factors such as:  (1) the
age, developmental status, circumstances, needs, and best interest of the
child; (2) the circumstances of the managing conservator and of the parent named
possessory conservator; and (3) other factors).  We overrule Maribel’s third
issue.

V.        Geographic Restriction

            By her fourth issue, Maribel contends that there
was no evidence for the trial court “to determine that a geographical
restriction to Hidalgo County was appropriate and in the best interest of the
child.”[14] 
Maribel argues that, pursuant to section 153.134 of the family code, the trial
court “should have specified that Maribel has the right to determine the
primary residence of the child without regard to geographic location.”  Maribel
provides no other authority and makes no other arguments to support her
contention.

            Pursuant to section 153.134 of the family code,
in rendering an order appointing joint managing conservators, the trial court
shall

designate the
conservator who has the exclusive right to determine the primary residence of
the child and . . . establish, until modified by further
order, a geographic area within which the conservator shall maintain the child's
primary residence . . . or . . . specify
that the conservator may determine the child’s primary residence without regard
to geographic location.

 

Id. § 153.134(b)(1)(A) (West 2008).  “[T]he purpose
of imposing a geographic residency restriction is to ensure that those who have
rights to possession of the child are able to effectively exercise such
rights.”  In re S.M.D., 329 S.W.3d 8, 22 (Tex. App.–San Antonio 2010, no
pet.).

The trial court appointed Maribel
and Luis as joint managing conservators of the child.  Therefore, the trial
court had authority, pursuant to section 153.134, to establish that Maribel
must maintain the child’s primary residence in Hidalgo County.  See Bates v.
Tesar, 81 S.W.3d 411, 440 (Tex. App.–El Paso 2002, no pet.) (“The revised
language [of section 153.134] requires the court to specify which parent shall
determine the residence of the child and then permits the court to establish a
geographic area in which that parent shall establish the child's residence or
allow the parent to establish the residence without restriction.  The court may
define this geographic area as ‘the county in which the child is to reside and
any contiguous county thereto. . . .’”).  Moreover, Maribel provides no
authority and points to nothing in the record supporting a conclusion that the
trial court abused its discretion by imposing a geographic residency
restriction.  See Stucki v. Stucki, 222 S.W.3d 116, 123-24 (Tex. App.–Tyler
2006, no pet.) (explaining that the best interest of the child is the primary
concern in determining possession and access to the child and that the trial
court’s order establishing a geographic restriction will only be reversed if
the trial court abuses its discretion)[15];
Bates, 81 S.W.3d at 440 (finding that the trial court did not abuse its
discretion in establishing a geographic residency restriction).  Therefore, we overrule
Maribel’s fourth issue.

VI.       Conclusion

            We reverse the judgment insofar as it pertains
to the division of the marital estate and the amount of child support, and we
remand to the trial court for proceedings consistent with this opinion.  In all
other respects, the judgment is affirmed.

 

_____________________

Rogelio Valdez

                                                                                                Chief
Justice

 

Delivered and filed the 

30th day of June, 2011.

 

 

 









[1]
Luis claimed that the real property and the lot were his separate property. 
Maribel claimed that only the lot and “shell of a house” were Luis’s separate
property.





[2]
The trial court admitted the letter into evidence.  In the letter, Luis also
stated that he was drinking every day.  Maribel testified on redirect
examination that Luis still drinks every day.





[3]
Luis agreed that his business, including the equipment, is worth $150,000.





[4]
The trial court granted Maribel the right to designate the child’s residence
within Hidalgo County.





[5]
We note that at trial, no evidence was presented that Maribel actually had an
IRA or of the value of that IRA, if any.





[6]
The trial court ordered Luis to pay the following debts:  (1) the sum of $5,000
to Maribel for improvements made to his separate property; (2) $10,000 to
Maribel for her interest in the 15 acre tract of land; (3) $3,000 to Maribel
for her interest in the gold coin collection and $500 bill; (4) debts and taxes
on the real property awarded to him; (5) debts on all motor vehicles and
motorcycles in his possession; (6) credit card debt, if any in his name ; (7)
all debts incurred solely by him; and (8) all taxes, etc., on real and personal
property awarded to him.  The trial court did not determine how much debt, if
any, Luis owed on the real and personal property awarded to him.  In the above
charts, we have already accounted for the known amount of debts Luis was
ordered to pay.





[7]
The trial court stated that it was awarding Maribel half of Luis’s interest in
the 15 acre tract of land.  The trial court found that Maribel should receive
$10,000; therefore, Luis was awarded the other half—$10,000.





[8]
The trial court required Luis to pay Maribel $3,000 for her interest in the
gold coins and $500 bill.





[9]
The trial court ordered Maribel to pay the following debts:  (1) the balance
due on the promissory note in the original amount of $81,000 for the mortgage
of the Date Palm property; (2) all debts on all motor vehicles in her
possession; (3) taxes on any real property awarded to her; (4) credit card debt
in her name; (5) all debts incurred solely by her after March 9, 2001; and (6)
all taxes, etc., due on the real and personal property awarded to her.  Again,
in its judgment and findings of fact, the trial court did not provide any
values for the amount of debt owed by Maribel.





[10]
Although, the amount of the parties’ debt is a consideration in determining the
division of the marital estate, we have already accounted for the amount of
known debts in our analysis.  The trial court did not attribute values to the
other debts it ordered the parties to pay.  Therefore, these unknown amounts do
not affect our analysis.





[11]
The trial court made the following findings of fact:

8.         There was evidence of family violence. 
[Luis] committed family violence when he and [Maribel] were together.  [Luis]
threatened her, choked her and spit in her face.  Police were called out to the
residence 15 to 20 times.  There were several times [Maribel] filed police
reports about guns.  [Luis] showed up with a gun at least two times at
[Maribel’s] mother’s house when [Maribel] was there.

 

. . . .

 

30.        [Luis] does not know if the profits from
the sales of trucks and other things he sells are indicated anywhere in the
taxes.

 

31.        [Luis] does not know how many vehicles he
has purchased and does not keep records and he does not have all the vehicles
records [sic] to disclose in the Inventory.

 

. . . .

 

43.        [Maribel] denied [Luis] access to his son
on Father’s Day when [Luis] was using drugs.  [Maribel] took her son from
[Luis] and called the police department.  [Luis] left a note on [Maribel’s]
doorstep admitting that he was using drugs and he was in possession of cocaine
at the time.

 

44.        [Luis] has the habit of hanging around with
the wrong crowd and has dealt drugs before.

 

45.        [Luis] has taken their son to bars.  For
his birthday, [Maribel’s] son said he wanted a pool table because his dad takes
him to shoot pool at the Jungle Inn.  [Maribel] took her son out of a bar in
2001, when he was 2 ½ years old, when he was there with his father.

 

46.        In 2004, [Maribel] obtained a Protective
Order against [Luis].

 

47.        There are
major changes in the child when he returns from visitation with [Luis].  He
comes back saying [Maribel] is the worst mom, calling her names, and referring
to her as being fat and asks how she can afford everything she buys.

 





[12]
The trial court found that Luis owned a business worth $150,000, that his annual
income was $87,459 and that Maribel’s annual income was $50,000 plus bonuses. 
The trial court did not state the amount of bonuses Maribel receives annually. 
However, she testified that she received approximately $7,000 in bonuses.





[13]
We note that although, in its judgment, the trial court ordered Luis to pay
$500 per month in child support, in its findings of fact it found that Luis’s
income required him to pay $1,000 per month in child support.  There is nothing
in the record to explain this discrepancy between the judgment and the trial
court’s findings of fact.





[14]
The legal and factual sufficiency of the evidence are factors which can be
considered in determining whether an abuse of discretion has occurred.  In
re J.C.K., 143 S.W.3d 131, 135 (Tex. App.–Waco 2004, no pet.); London v.
London, 94 S.W.3d 139, 143-44 (Tex. App.–Houston [14th Dist.] 2002, no
pet.).





[15]
Although Maribel generally asserts that there is no evidence that a geographic
restriction was in the child’s best interest, she does not provide a clear
argument with citation to appropriate authority in support of her assertion.  See
Tex. R. App. P. 38.1(i).