**Affirmed and Memorandum Opinion filed November 29, 2011.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-01031-CV

---

## MARK JOSEPH GORDON, Appellant

### V.

## BRENDA CAROL GORDON, Appellee

---

**On Appeal from the County Court at Law No. 1
Galveston County, Texas
Trial Court Cause No. 2009FD2519**

---

## MEMORANDUM OPINION

An ex-husband appeals the trial court's award of spousal maintenance to his ex-wife in the trial court's divorce decree and challenges the trial court's division of community property. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellee/petitioner Brenda Carol Gordon filed a petition for divorce from appellant/respondent Mark Joseph Gordon. Mark filed a counter-petition seeking custody of the couple's two minor children. After participating in mediation, the parties agreed to resolve issues pertaining to conservatorship, child support, and possession of

the minor children, as well as division of personal property, all of which was evinced in a mediated settlement agreement.

The parties proceeded to a bench trial to determine issues involving Brenda's request for spousal maintenance, valuation of real property, and division of community debt. The trial court rendered a final decree of divorce, ordering, among other things, a just and right division of the marital estate. The trial court ordered that real property, consisting of 6.16 acres in Hays County, Texas ("Hays County Property"), should be sold and that the proceeds from the sale should be applied to community debt consisting of outstanding balances on three different credit cards. In dividing the community estate, the trial court ordered that Mark was responsible for paying the balances due on two of the credit cards and that the parties would split the balance due on a third card. The court ordered that after paying the debt accrued on the credit cards, the parties could split any remaining proceeds from the sale of the Hays County Property. The trial court awarded Brenda $1500 each month in spousal maintenance for a period of three years.

Mark requested findings of fact and conclusions of law, which the trial court ultimately issued. The trial court found that a disproportionate division of the community estate in Brenda's favor was just and right, and the trial court cited to evidence supporting a number of factors contributing to its decision. The trial court found that the Hays County Property should be sold and the net sales proceeds applied to the parties' credit card debt as part of the just and right division of community property. In addition, the trial court found that Brenda was eligible for court-ordered spousal maintenance. The trial court listed numerous findings in support of the nature, amount, duration, and manner of the maintenance payments. The trial court found that Brenda exercised diligence in developing skills to become self-supporting, that Brenda's recent past and current employment do not provide for her minimum reasonable needs, and that three years was the shortest reasonable period necessary for Brenda to meet her reasonable minimum needs through employment or development of vocational skills.

Mark filed a motion for new trial, which was overruled by operation of law. Mark now challenges the trial court's award of spousal maintenance and the trial court's division of the community estate.

ANALYSIS

**Spousal Maintenance Award**

Mark claims in his first issue that the trial court abused its discretion in awarding Brenda spousal maintenance for three years, asserting that Brenda was not entitled to receive spousal support because she has sufficient property to provide for her minimum needs. Mark also asserts that Brenda failed to exercise diligence in seeking employment to warrant the award of spousal maintenance.

A trial court's decision to award spousal maintenance is subject to review for abuse of discretion. *See Dunaway v. Dunaway*, No. 14-06-01042-CV, 2007 WL 3342020, at *2 (Tex. App.—Houston [14th Dist.] Nov. 13, 2007, no pet.) (mem. op.); *Trueheart v. Trueheart*, No. 14-02-01256-CV, 2003 WL 22176626, at *2 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem. op.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, without reference to guiding rules and principles, or without supporting evidence. *See Dunaway*, 2007 WL 3342020, at *2; *Trueheart*, 2003 WL 22176626, at *2; *Smith v. Smith*, 115 S.W.3d 303, 305 (Tex. App.—Corpus Christi 2003, no pet.). There is no abuse of discretion if there is some evidence of substantive and probative nature supporting that decision. *See Dunaway*, 2007 WL 3342020, at *2; *Trueheart*, 2003 WL 22176626, at *2. Under the abuse-of-discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error; however, they are relevant factors in assessing whether the trial court abused its discretion. *Dunaway*, 2007 WL 3342020, at *2.

Findings of fact issued by the trial court in a bench trial have the same force and dignity as a jury's verdict upon special issues; but, the findings are not conclusive when a complete statement of facts appears in the record. *Id.* Therefore, we apply the same

3

standards when reviewing the legal and factual sufficiency of the evidence supporting the trial court's findings of fact as we do when reviewing the evidence supporting a jury's answer to a special issue. *Id.*

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A trial court abuses its discretion as to legal matters when it fails to analyze or apply the law correctly. *Dunaway*, 2007 WL 3342020, at *2.

The trial court ordered Mark to pay spousal maintenance based upon the part of former Texas Family Code section 8.051, which provided that the trial court may award spousal maintenance if "the duration of the marriage was 10 years or longer, the spouse seeking maintenance lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse's minimum reasonable needs, as limited by Section 8.054, and the spouse seeking maintenance . . . clearly lacks earning ability in

4

the labor market adequate to provide support for the spouse's minimum reasonable needs, as limited by Section 8.054." TEXAS FAMILY CODE ANN. § 8.051 (West 2006).[1] The term "minimum reasonable needs" is not defined in the Texas Family Code. *See Trueheart*, 2003 WL 22176626, at *2. A trial court determines whether a party's minimum reasonable needs are met on a fact-specific, individualized, case-by-case basis. *See Smith*, 115 S.W.3d at 306; *Trueheart*, 2003 WL 22176626, at *2. Under the applicable version of the Family Code, with an exception not applicable to the case under review, the Legislature created a rebuttable presumption that spousal maintenance under this part of section 8.051 "is not warranted unless the spouse seeking maintenance has exercised diligence in: (1) seeking suitable employment; or (2) developing the necessary skills to become self-supporting during a period of separation and during the time the suit for dissolution of the marriage is pending." *See* TEX. FAMILY CODE ANN. § 8.053(a) (West 2006).[2] Section 8.052 of the Texas Family Code enumerates multiple factors for the trial court's consideration in determining the nature, amount, duration, and manner of periodic payments. *See* TEX. FAMILY CODE ANN. § 8.052 (West 2006).[3]

The evidence reflects that Brenda holds a degree in business management, but spent twenty years away from the workforce rearing the couple's four children. Brenda had worked part-time in the recent past as a substitute school teacher, but that employment came to an end when the school system implemented budget cuts. At the time of trial, Brenda was working as a used-textbook buyer. In that position, Brenda

---

[1] This statute was amended effective September 1, 2011. *See* Acts 2011, 82nd Leg., ch. 486 (H.B. 901), § 1, 2011 Tex. Sess. Law Serv. 12,39, 1239 (West) (current version at TEXAS FAMILY CODE ANN. § 8.051 (West 2011)). We apply the former version of this statute that does not apply to cases filed on or after September 1, 2011.

[2] This statute was amended and revised effective September 1, 2011. *See* Acts 2011, 82nd Leg., ch. 486 (H.B. 901), §§ 2, 9(1), 2011 Tex. Sess. Law Serv. 1239, 1240, 1242 (West) (current version at TEXAS FAMILY CODE ANN. § 8.053 (West 2011)). We have applied the former version of this statute, as the current version of the statute applies to cases filed on or after September 1, 2011.

[3] This statute was amended effective September 1, 2011. *See* Acts 2011, 82nd Leg., ch. 486 (H.B. 901), § 1, 2011 Tex. Sess. Law Serv. 1239, 1239 (West) (current version at TEXAS FAMILY CODE ANN. § 8.052 (West 2011)). We have applied the former version of this statute, as the current version applies to cases filed on or after September 1, 2011.

received as compensation annual sales commissions of roughly $15,000. The record reflects that Brenda submitted a number of job applications and attempted to network in pursuit of other job possibilities to no avail.

Mark claims that Brenda did not establish that she exercised diligence in submitting job applications. Mark points out that Brenda submitted many of her fifteen job applications in a single day and that she submitted no other applications within two months of the May 2010 trial setting. In arguing that the trial court abused its discretion in awarding spousal maintenance, Mark is effectively asserting that the evidence is legally insufficient to support the trial court's findings under the applicable versions of Texas Family Code sections 8.051, 8.052, 8.053, and 8.054. The trial court found that Brenda was developing the necessary skills to become self-supporting during the period of separation and during the time the marriage-dissolution suit was pending. The record evidence reflects that Brenda's efforts to find full-time work were hindered by her obligations as full-time primary caretaker to the couple's two minor children. In her role as caretaker, Brenda had to attend to frequent medical appointments for one of the children. In addition, Brenda had to undergo medical treatments for cancer, and her own health issues also made it difficult to obtain full-time employment during this period. We conclude that the evidence at trial is legally sufficient to support the trial court's finding that Brenda had overcome the presumption against spousal maintenance under section 8.053(a). *See Smith*, 115 S.W.3d at 306.

Relevant factors to consider in determining the nature, amount, duration, and manner of periodic payments are outlined in the applicable version of Texas Family Code. *See* TEX. FAMILY CODE ANN. § 8.052.

The trial court issued the following relevant findings:

- Brenda is eligible for court-ordered maintenance because:
  - The duration of marriage was longer than ten years;

6

- Brenda lacks sufficient property, including property distributed to her pursuant to the Final Decree of Divorce, to provide for Brenda's minimum reasonable needs; and

- Brenda clearly lacks earning ability in the labor market adequate to provide support for Brenda's minimum reasonable needs.

- Although Brenda has been employed as a substitute teacher in the past, employment as a substitute teacher does not provide for her minimum reasonable needs.

- Brenda's current employment as a used-textbook buyer does not provide for her minimum reasonable needs.

The undisputed evidence and the trial court's findings reflect that the parties have been married for more than ten years and support the trial court's award of spousal maintenance.

The evidence reflects that Brenda is a fifty-year old woman who spent the last twenty years away from the workforce so that she could stay at home and rear the couple's children. Brenda also worked some in the recent past as a substitute teacher, but that employment had ended by the time of trial. According to the record, Brenda underwent chemotherapy in 2009. She secured employment as a used-textbook buyer earning $15,000 annually. A spouse's mere employment does not preclude an award of spousal maintenance. *See In re Marriage of Hale*, 975 S.W.2d 694, 698 (Tex. App.—Texarkana 1998, no pet.). Moreover, a minimal employment income does not support a conclusion that Brenda's minimum reasonable needs have been met. *See id.* (rejecting proposition that minimum wage is adequate to meet minimum reasonable needs in every case). Although Mark refers to Brenda's college degree as a factor against the spousal maintenance award, a spouse's holding of a college degree does not disqualify that spouse from receiving spousal maintenance. *See Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex. App.—Dallas 2003, no pet.).

To support his argument Mark points to Brenda's receipt of the family home and Brenda's holding of separate property that generates income. Brenda pays the income

7

she earns from this separate property to her parents. The evidence in the record reflects that even without having to pay rent or a mortgage on the home, Brenda's earnings were insufficient to meet her minimum reasonable needs. *See In re Hale*, 975 S.W.2d at 697. Mark also refers to an award of property to Brenda of $500,000 in "accessible" retirement assets[4] to support his contention that Brenda does not lack sufficient property to meet her minimum reasonable needs. But, the trial court's findings reflect that Brenda's share of retirement assets were valued at just over $327,000; the record evidence does not reflect that the funds were accessible to Brenda immediately or without substantial consequence. The trial court was within its discretion to discount consideration of the availability of these funds for Brenda's short-term use, justifying spousal maintenance even after consideration of Brenda's property award. *See* TEX. FAMILY CODE ANN. § 8.052; *Smith*, 115 S.W.3d at 308 (concluding that community property and liabilities apportioned to a spouse, along with a spouse's ability to meet independent needs are relevant factors in a trial court's award of spousal maintenance); *Trueheart*, 2003 WL 22176626, at *3 (rejecting similar argument on the basis that some community assets, such as retirement accounts, could not be easily liquidated). The record evidence supports the trial court's findings that the assets Brenda received from the community estate and the money she earned as a used-textbook buyer are insufficient to meet her needs. *See Lopez v. Lopez*, 55 S.W.3d 194, 199 (Tex. App.—Corpus Christi 2001, no pet.) (concluding award of spousal maintenance to the wife was not an abuse of discretion when considering, among other things, the wife was awarded a home and the proceeds from the sale of another home, her poor physical health, and her limited work experience outside of the home).

Mark asserts that there is no evidence to support the trial court's finding that it would take Brenda three years to obtain adequate employment. Under the version of the Family Code applicable to the case under review, a trial court's award of spousal

---

[4] The parties stipulated that the retirement accounts were to be divided equally.

maintenance is generally limited to no more than three years.  *See* TEX. FAM. CODE ANN. § 8.054(a)(1) (West 2006).[5]  The trial court awarded Brenda spousal maintenance for 36 months, finding that "a period of three years allows Brenda to meet her minimum reasonable needs by obtaining appropriate employment or developing an appropriate skill."  The trial court's findings reflect that the trial court considered the following factors in awarding the spousal maintenance: Brenda's financial resources and ability to meet her needs independently; Brenda's education and employment skills and the time necessary to acquire sufficient education or training to find appropriate employment; the duration of the parties' marriage; Brenda's age, employment history, earning ability, and physical condition; Mark's ability to meet his personal needs and provide for periodic child-support payments while helping to meet Brenda's financial needs; the comparative resources of the parties, and Brenda's contributions as a stay-at-home parent.  The trial court found that Mark's average monthly gross income exceeds $7,500 and that Brenda's current employment does not provide for her minimum reasonable needs.

Brenda testified that she was out of the work force for twenty years, which was probative evidence that it would take some time for her to gain the necessary training or education to develop a skill set that would justify more substantial employment with higher wages.  Brenda described how her efforts in networking for employment opportunities and submitting numerous job applications had been unsuccessful for the most part.  This testimony is probative evidence that employment opportunities were not readily available to Brenda.  Brenda is the primary caregiver for the parties' two minor children, who will not graduate from high school for more than three years; Brenda is thus limited in her ability to work full-time or to develop skills or education necessary to find work during this period.  And, Brenda's ability to work outside the home is further stymied by her need to attend to her own cancer treatment and follow-up care and to their daughter's diabetes care and management.

---

[5] This statute was amended in 2011.

Considering the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that would support these findings, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we conclude that the trial evidence would enable reasonable and fair-minded people to make the following findings:

> (1) the duration of the marriage was ten years or longer;
>
> (2) Brenda lacks sufficient property, including property distributed to Brenda under the Family Code, to provide for Brenda's minimum reasonable needs, as limited by the applicable version of Family Code section 8.054;
>
> (3) Brenda clearly lacks earning ability in the labor market adequate to provide support for Brenda's minimum reasonable needs, as limited by the applicable version of Family Code section 8.054;
>
> (4) Brenda has exercised diligence in seeking suitable employment or developing the necessary skills to become self-supporting during the period of separation and during the time the suit for dissolution of the marriage is pending; and
>
> (5) based upon the factors listed in the applicable version of Family Code section 8.052, a three-year duration for the spousal maintenance order is the shortest reasonable period that allows Brenda to meet her minimum reasonable needs by obtaining appropriate employment or developing an appropriate skill.

*See City of Keller*, 168 S.W.3d at 823, 827; *Smith*, 115 S.W.3d at 305. We conclude the evidence is legally sufficient to support the challenged spousal-maintenance findings. The trial court did not abuse its discretion in ordering Mark to pay Brenda spousal maintenance. *See City of Keller*, 168 S.W.3d at 823, 827; *Smith*, 115 S.W.3d at 305. Accordingly, we overrule Mark's first issue.

**Challenges to Alleged Vagueness in Trial Court's Order Dividing Community Property**

In his second issue, Mark challenges as vague and unenforceable the trial court's division of community property involving debt on consumer credit cards. The trial court

10

ordered the parties to sell real property valued at $86,160. The trial court's final divorce decree is set forth in relevant part below:

> The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property, if any) shall be distributed as follows:
>
>> (a) the balance still remaining due on the Citi Bank (student loans), Account number ……..70 as that balance was on June 1, 2010;
>>
>> (b) the balance still remaining due on a Chase Mastercard, Account No. ……..2133 as that balance was on June 1, 2010;
>>
>> (c) the balance still remaining due on the Bank of America Mastercard, Account No. ……..5652 as that balance was on June 1, 2010; and
>>
>> (d) any remaining net sales proceeds shall be split equally between the parties.

The record reflects that, as originally drafted, items (a) through (d) in the trial court's final decree of divorce began with the numerical words, "First," "Second," "Third," and "Fourth." Later, those words were specifically crossed through; the decree bears the initials of the parties' respective trial counsel in the left margin beside each item (a) through (d).

The record reflects that, at a hearing to consider entry of the final order, Mark's counsel specifically objected to the inclusion of these numerical words. The trial court suggested removing the terms and inquired as to counsel's position. In response, Mark's counsel stated that he would not object to that change. According to the record, the trial court noted that the numerical words would be removed and asked attorneys for both of the parties, after removal of these words, to initial the changes on the order itself. Counsel indicated approval of the changes by placing their initials next to the revised portions.

Mark asserts on appeal that in its final decree of divorce, the trial court failed to prioritize the order in which the three community debts should be paid from the sales proceeds of the real property, and, therefore, the decree is vague and unenforceable.

11

Under the doctrine of invited error, a party cannot request a specific action from the trial court and then complain on appeal that the trial court committed error in granting the requested relief. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005). Given that Mark objected to the inclusion of the words which had prioritized the order of payment, and the trial court then omitted the words as Mark requested, Mark cannot now successfully challenge the trial court's ruling on this basis. *See id.*; *Horton v. Horton*, 335 S.W.3d 862, 899 (Tex. App.—Beaumont 2011, pet. denied); *Keith v. Keith*, 221 S.W.3d 156, 164 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (overruling issue based on invited error). Mark's second issue is overruled.

**Alleged Disproportionality of Division of Community Estate**

In his third issue, Mark claims that the trial court abused its discretion by awarding a disproportionate share of the community estate to Brenda. Specifically, he argues that the trial court failed to consider Brenda's separate property, including real property and stock.

In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAMILY CODE ANN. § 7.001 (West 2006). The trial court has broad discretion in dividing the estate of the parties; we review a trial court's division order for an abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). We presume the trial court did not abuse its discretion in dividing the estate, and we will not disturb the division on appeal unless the appellant demonstrates a clear abuse of discretion. *Id.*

The trial court's division need not be equal, so long as it is equitable and so long as the court has some reasonable basis for an unequal division of the property. *See Robles v. Robles*, 965 S.W.2d 605, 621 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd); *Zeiba v. Martin*, 928 S.W.2d 782, 790 (Tex. App.—Houston [14th Dist.] 1996, no writ) (op. on reh'g). A trial court does not abuse its discretion if the trial court bases its

decision on conflicting evidence or if there exists some evidence of a substantial and probative character to support the trial court's division. *Zeiba*, 928 S.W.2d at 787. As noted, under the abuse-of-discretion standard, the legal and factual sufficiency of the evidence are not independent grounds for error, but are relevant factors in assessing whether the trial court abused its discretion. *See Knight*, 301 S.W.3d at 728.

In exercising its discretion to divide the community estate, the trial court may consider many factors, including the disparity of incomes or of earning capacities, the spouses' respective earning capacities and abilities, business opportunities, education, relative physical conditions, relative financial conditions and obligations, size of separate estates, and the nature of the property. *See Murff*, 615 S.W.2d at 698–99. In its findings the trial court noted its consideration of evidence regarding: disparity of the parties' earning power, the parties' respective abilities to support themselves; Brenda's health; Brenda's managing conservatorship of the two minor children; the parties' education and future employability; community indebtedness and liabilities; the parties' respective earning power, business opportunities, capacities, and abilities; the nature of the property involved in the division; the size and nature of Brenda's separate estate; the source of payment of attorneys' fees, and attorneys' fees. The record reflects that Mark earns well over $100,000 annually compared to Brenda's $15,000 annual income. *See O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.) (reversing trial court's judgment, noting that evidence and majority of factors supports a disproportionate award in favor of wife based, in part, on husband's significantly greater income, earning capacity, and business opportunities). Although Brenda holds a business degree, she left the workforce to be a stay-at-home parent for two decades while Mark used his master's degree to support the family as a chemical engineer. *See Smith v. Smith*, 836 S.W.2d 688, 689, 693 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (concluding trial court did not abuse its discretion in disproportionate award of community property to homemaker wife). Brenda underwent chemotherapy for her leukemia and also underwent a number of major medical operations, including brain surgery. *See O'Carolan*, 71 S.W.3d at 533

13

(noting that wife's health problems, including brain surgery, would impair wife's future earning abilities in reversing trial court's judgment). As set forth in the parties' mediated settlement agreement, Brenda was the primary caretaker of the couple's two youngest children, one of whom required care and training for health management of the child's diabetes. The couple had accrued significant credit card debt for which neither party could afford to pay absent the sale of the Hays County Property. The bulk of the credit card debt was attributable to the parties' attorney's fees. *See Taylor v. Taylor*, 680 S.W.2d 645, 648 (Tex. App.—Beaumont 1984, writ ref'd n.r.e.) (providing that trial court has authority to order the payment or disposition of the community debts in its consideration and to determine the division of the community estate). Of the major assets to be divided, the family's home, without a mortgage, was awarded to Brenda. *See O'Carolan*, 71 S.W.3d at 533 (considering nature of the property and evidence that wife was awarded home in need of repairs in reversing the trial court's judgment in favor of the husband). The record reflects that the home required ongoing repairs. As such, the award of this asset also would mean future monetary outlay for Brenda.

Mark claims that Brenda owns separate real property and separate stock, both of which generate income that Brenda gives her parents. Contrary to Mark's assertion, the record reflects that any income generated by these separate assets was reserved by Brenda's parents when they gifted the principal assets to Brenda; Mark was aware of this arrangement during the parties' marriage. *See Phillips v. Phillips,* 75 S.W.3d 564, 574 (Tex. App.—Beaumont 2002, no pet.) (affirming trial court's disproportionate division of property in favor of wife based, in part, on evidence that wife's parents retained some rights to property, including income, when parents deeded real property to husband and wife). Mark also speculates that, depending on how the credit card debts are paid off from the net proceeds of the sale of the Hays County Property, Brenda potentially stands to benefit from a disproportionate division of the community estate favoring her by 63% to Mark's speculative 47%. But, Mark does not offer any arguments that the trial court abused its discretion in light of the existing record. *See* TEX. R. APP. P. 38.1(i). To the

14

degree Mark complains generally that "any disparity should have been balanced by factors favoring" him, Mark has presented no substantive arguments or legal authority in support of his argument. *See id.*

Given the evidence at trial, Mark has not demonstrated that the trial court's evaluation of the evidence resulted in an abuse of discretion by ordering an unequal division of the community property. Mark's disproportionality argument fails. *See O'Carolan*, 71 S.W.3d at 533 (reversing trial court's judgment, noting that evidence favored a disproportionate award in favor of wife). Accordingly, we overrule Mark's third issue.

Having overruled each of Mark's three issues on appeal, we affirm the trial court's judgment.

/s/　　Kem Thompson Frost
　　　　Justice

Panel consists of Justices Frost, Jamison, and McCally.